## J. B. G. ARNOULT *v.* CITY OF NEW ORLEANS.

After the annexation of Lafayette to New Orleans the Legislature required the Parish Recorder of Jefferson to make copies of acts relating to property in Lafayette, for registry in New Orleans. The costs of these copies were fixed by law, and were to be paid by the city of New Orleans. *Held:* There is nothing in such legislation which either violates or impairs the obligation of a contract, or destroys a vested right.

To the city of New Orleans, as a civil corporation, has been delegated a portion of the powers of the government; it was established, as are other city corporations, for the public convenience, and it is certainly competent for the Legislature, from time to time, as the public convenience or necessity may require, to add to or abridge the powers and duties of the corporation, to restrict or enlarge the boundaries of this delegated authority, except so far as they are recognized and guaranteed by the Constitution itself.

The Act of 1853 is entitled "An Act to provide for the removal of certain public records from the Fourth District of New Orleans to the Parish of Jefferson," and the Act of 1854 is entitled an Act amendatory thereof. Each section in both of these Acts has direct reference to the subject-matter of its legislation, or its necessary incidents. It certainly was not necessary to meet the requirements of the Constitution, for the Legislature to pass two separate acts for the purpose of accomplishing one object—the first in order that a thing should be done, and the second to indicate the manner in which the expense should be defrayed.

The title of the amendatory Act not only refers to but includes the title of the first Act. The Constitution does not prohibit any designation of an amendatory Act by a reference to the title of the Act amended.

The object of the Constitution was to prevent the amendment or revival of laws *merely* by reference to their title. It was intended that each amendment and each revival should speak for itself and stand independent and apart from the Act revived, or section amended.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Roselius* and *Filleul*, for plaintiff. *Livingston*, City Attorney, for defendant.

LEA, J. The plaintiff seeks to recover from the city of New Orleans compensation for certain transcripts of conveyances made by him in accordance with the provisions of an Act of the Legislature, approved 30th April, 1853, and an Act amending the same, approved 15th March, 1854.

These statutes were enacted for the purpose of preventing the difficulty and confusion in tracing the registry of conveyances of, and incumbrances upon real estate, which it was apprehended might result from the separation of the city of Lafayette from the parish of Jefferson and its annexation to the city of New Orleans.

These statutes, so far as they are applicable to the present controversy, provide, substantially, that the Recorder of the parish of Jefferson should make and cause to be made a full and complete synopsis of the records of the sales of all real estate and slaves situated in the city of Lafayette, to be delivered "to the Recorder of Conveyances of the city of New Orleans," for which he was authorized to charge and receive the sum of one dollar for each and every transcript of conveyance, as aforesaid, "the expenses to be paid by the city of New Orleans." A similar provision was made for the transfer of the registry of all liens, privileges, judgments, &c.

The plaintiff, who is the Recorder of the parish of Jefferson, it is admitted has, in accordance with the provisions of the Acts above referred to, furnished the transcripts of 10,503 conveyances, which have been duly delivered to the Recorder of Conveyances of the parish of Orleans.

. It appears that after 3,000 transcripts of conveyances had been furnished, the plaintiff was paid the sum of $3,000—that being the rate of compensation provided by the statute; but when his claim of remuneration for the remainder of the transcripts was presented, (after some hesitation and discussion,) payment was refused, on the ground, as appears from the admissions on file, "that the plaintiff had instituted a suit against the city for the recovery of the amount." Without examining into the validity of such a reason for a refusal, the question to be determined is, whether the city is or is not legally bound to pay the plaintiff's claim.

It is urged in the pleadings and in the brief of the counsel for defendant, that the Act of the Legislature, under which the plaintiff claims, is illegal and void, on the ground, 1st, that the Legislature cannot compel the defendant to pay for the value of work executed for the benefit, advantage and convenience of others, the defendant being only bound upon the contracts made in accordance with the laws regulating their powers and duties; and 2d, that the Acts of 1853 and 1854 are both unconstitutional, the object of the Act of 1853 not being expressed in its title; and that the Act of 1854 was passed in violation of Articles 115 and 116 of the Constitution of the State. Wherefore the defendant claims a judgment against the plaintiff on his principal demand, and demands in reconvention the reimbursement of the $3,000 paid to plaintiff under a mistaken view of the legal liability therefor.

To the city of New Orleans as a civil corporation has been delegated a portion of the powers of the government; it was established as are other city corporations for the public convenience; and it is certainly competent for the Legislature from time to time, as the public convenience or necessity may require, to add to or abridge the powers and duties of the corporation; to restrict or enlarge the boundaries of this delegated authority, except so far as they are recognized and guaranteed by the Constitution itself. Now, in the exercise of this discretion, and considering that it was for the public benefit, the Legislature have indicated the manner in which all existing acts affecting real estate and slaves in the city of Lafayette, at the time of its consolidation with the city of New Orleans, should be registered in the parish to which it was transferred, and of which it became a component part. At the same time a proper compensation was provided for the necessary labor in effecting the registry, as required by law.

If the obligation of executing the act at the expense of the city had been imposed upon the Mayor or some other city functionary, it would have been, in substance, what it is now. The charge of carrying out an Act rendered necessary

ARNOULT
v.
NEW ORLEANS.

by the alteration in the boundaries of the city is imposed upon the corporation. It formed a part of the legislation incident to the consolidation of the two cities into one, and the expense incident to the change is as properly chargeable upon the city as any other expense incident to its organization.   There is nothing in such legislation which either violates or impairs the obligation of a contract or destroys a vested right.   Nor is the defence, in our opinion, tenable on the ground that the Acts referred to are in violation of Articles 115 and 116 of the Constitution.   The Act of 1853 is entitled " An Act to provide for the removal of certain public records from the Fourth District of New Orleans to the parish of Jefferson," and the Act of 1854 is entitled " An Act amendatory thereof."

Each section in both of the Acts has direct reference to the subject-matter of its legislation or its necessary incidents.   It certainly was not necessary to meet the requirements of the Constitution for the Legislature to pass two separate acts for the purpose of accomplishing one object—the first to order that a thing should be done, and the second to indicate the manner in which the expense of its execution should be defrayed.   " It is sufficient that the object of the law be stated in its title according to the understanding of reasonable men."   See 6th An., 605, *Municipality No. 3* v. *Antoine Michoud.*

We think, therefore, that these Acts embrace but one subject of legislation, which subject is clearly designated in their titles.   The next objection which is urged is, that the Act of 1854 is unconstitutional, because it purports to be an amendment of the Act of 1853 : that this amendment is effected by a reference to the title of the first Act, and because the whole of the amended Act is not reënacted and published at length.

The title of the amendatory Act not only refers to but includes the title of the first Act.   The Constitution does not prohibit any designation of an amendatory Act by a reference to the title of the Act amended : if it did, it would deprive the Legislature of most direct and accurate means of designating all amendatory legislation.

The Article of the Constitution is as follows :

" No law shall be revived or amended by reference to its title, but *in such case* the Act revived or section amended shall be reënacted and published at length." Constitution, Art. 116.

This was intended to prevent the amendment or revival of laws *merely* by a reference to their titles.   It was intended that each amendment and each revival should speak for itself; should stand independent and apart from the act revived or the section amended.   It was therefore provided that " *in such cases,*" if the object was to revive an act, it should be " *reënacted*" throughout; if the object was to *amend* an act then the " *section amended*" should be " *reënacted and published at length.*"   In the case under consideration the object was to amend an act, and accordingly all the " *sections amended*" have been reënacted and published at length.   It is urged, however, that the fifth section of the Act 1853 has been left out in the amendatory Act, and two new sections, upon a subject not embraced in the first Act, are added.   As it was not the intention of the Legislature to amend this section, it was probably not thought necessary to reënact it; but even upon the hypothesis that each amendatory Act should embrace the whole of the legislation contained in the Act of which it is an amendment—(a conclusion not warranted, as we think, by a fair and reasonable interpretation of the article referred to)—still it is evident that the section in question was at best mere surplusage.   It was a mere saving clause that nothing in the

Act should be so construed as to impair or invalidate any mortgage or conveyance <span style="float:right">ARNOULT<br>*v.*<br>NEW ORLEANS.</span> of property made prior to the promulgation of the Act, although no transcript should *thereafter* be made as provided by the Act. The law would have been precisely the same without such a clause as with it, and its addition to the Act of 1854 would neither add to nor in any manner alter or affect its scope, meaning or application as a statute.

The Act of 1854 has therefore every element of separate and detached legislation, which it is contended that the Constitution requires. The law means all that it would mean if the section were annexed. And its provisions, and all its provisions are fully operative without a reference to the Act of 1853. Under such circumstances we do not feel called upon by any rule of interpretation which might be adopted to set aside as unconstitutional and void a statute which was considered to be one of public utility, which was intended to guard against the confusion and uncertainty in the registry of public acts incident to the annexation of the city of Lafayette to the parish of Orleans. It is perhaps needless to add that we do not consider that the last two sections of the Act of 1854 which provides the means of defraying the expense incident to its execution, as being legislation upon a subject different from that embraced in the first Act.

It is therefore ordered that the judgment appealed from be affirmed, with costs.