STATE OF LOUISIANA *v.* HENRY, a slave.

1b  297
51 1219

The Act of the Legislature relative to slaves, approved March 19th, 1857, does not contravene Art. 115 of the Constitution, which declares that " every Act of the Legislature shall embrace but one object and that shall be expressed in the title."
The State is not bound to furnish the accused with a list of the talesmen as they are summoned.

APPEAL from the First Justice's Court of the Parish of West Feliciana.
   *T. J. Semmes,* Attorney General, for the State.   *Wm. W. Leake,* for defendant and appellant.

MERRICK, C. J.   The accused has been convicted of murder, and condemned to be executed.

On his appeal to this court, his counsel relies for a reversal of the judgment of the lower court upon the unconstitutionality of the Act relative to slaves, under which he was tried, and also upon the erroneous ruling of the court on the trial of the cause.

The Act of 19th March, 1857, relative to slaves, is supposed to be unconstitutional because it contravenes Article 115 of the Constitution, which declares that " every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title."

It is true that the Act in question treats of crimes committed by slaves, and prescribes the penalties; it declares the duties of Justices of the Peace and District Attorneys in relation to the same; regulates the trial and punishment, and provides for the compensation of the owner where slaves are executed; treats of runaways; compels the attendance of witnesses, and declares who may be witnesses in certain cases.

This classification of the various provisions of the Act shows that by analysis and subdivision we may discover more than one object in the Act, if we attend to each separate provision of the same, instead of its general scope. No Act could be framed on any subject, however simple, if it contained more than a single provision, which might not be obnoxious to the same charge. And to give this interpretation to the Constitution would require as many distinct Acts of the Legislature as there are paragraphs and provisions in any one Act.

Suppose the statute had been subdivided, and the first sixteen sections had been grouped under a statute entitled " An Act relative to crimes committed by slaves. It could then have been objected with equal propriety, that the statute embraced more than one object, because it embraced the crimes of murder, poisoning, arson, burglary, &c., &c.

If a statute were passed upon any one of these heads, in any manner recognizing any distinctions or grades in the offence, that again would be obnoxious to the same objection. It is thus seen, it could not have been the intention of the framers of the Constitution to restrict the Legislature to a single provision on each object of legislation. They had in view the object of preventing legislation under titles which were foreign to the same, and which furnished no index to the laws so passed. Incidentally also, this Article of the Constitution may prevent, in a measure, combinations among the members of the Legislature in the passage of laws, and leaves each bill to pass upon its own merits.

But it is urged, that if the Legislature may adopt a title so comprehensive as
38

STATE
v.
HENRY.

the one in question, then, under a title " relative to free white persons," the Legislature might pass an entire body of laws, such as the Civil Code of Louisiana.

The example given might present difficulty, and it shows it is not easy to draw the intended line of demarcation, if any exists, between an object considered as a genus and the objects which form its species. Without, therefore, undertaking to unravel this difficulty, we think we may safely assume that the title to the Act relative to slaves is a fair index to every one of the forty-three sections embraced therein. If duties are imposed by the Act upon Justices of the Peace, the Sheriff, or the District Attorney, it is only with relation to slaves. In like manner, every other section of the statute has a direct relation to the object specified in the title of the Act.

Then, when we look to the body of the Act, to see whether it contains more than one object, we must observe its general scope and not the subdivisions introduced by the statute itself. Testing the present Act by these rules, does not enable us to say it violates the Constitution in the particulars complained of.

A bill of exceptions was taken to the refusal of the magistrate to furnish the counsel of the accused with a list of the talesmen being summoned by the Sheriff, after the regular panel had been exhausted. It appears by the bill, that after three jurors were sworn and the panel exhausted, the Sheriff was directed to summon ten others; that while the Sheriff was performing this duty, the prisoner's counsel requested a list might be served upon him of the new jurors so summoned, but it was refused him on the ground that it would occasion too much delay, and as each juror came into the court-house he was called to be sworn, without waiting until the Sheriff had summoned the number ordered.

It was a matter within the discretion of the Justices of the Peace, whether they would delay the proceedings until the Sheriff returned, or proceed as fast as the jurors presented themselves. We are not aware of any law which makes it the duty of the State to furnish the accused with a list of the talesmen as they are summoned; and although a refusal to furnish such a list would not be error, we think where *several* talesmen have been summoned and are in attendance, such reasonable request of the prisoner, to be furnished a list, ought not to be refused. But in this case it appears the talesmen were called to be sworn as they appeared in the court-house, and it was impossible to furnish the accused with the list until the return of the absent Sheriff.

The remaining ground relied on by the prisoner is the alleged misconduct of two of the jurors, who held a conversation with bystanders, one of whom was reprimanded by the court. Conceding that the rules governing the trial of criminal cases in respect to white persons are applicable to the trial of slaves, it does not appear that the accused can avail himself of the objection in this case, because the improper conduct of the two jurors occurred when only three jurors were sworn, and no effort was made to cause them to be set aside and have others empanelled in their place, and moreover this was not even urged as a ground for a new trial, neither has any bill of exception been taken to the ruling of the lower court upon this point. As the accused and his counsel must have been aware of the misconduct of the jurors at the time it occurred, the case of the *State* v. *Hornsby* is not in point.    8 Rob. 558.

Judgment affirmed.