(69 South. 860)

No. 21161.

## STATE v. BOYLSTON.

(March 22, 1915.  On Rehearing, Nov. 2, 1915.)

*(Syllabus by the Court.)*

1. STATUTES ⬤⟳118 — TITLE AND SUBJECT-MATTER—EMBEZZLEMENT.

Paragraph 7 of section 1 of Act No. 189 of 1902, relating to misappropriation of money by clerks or officers of state banks, is unconstitutional, because not covered by the title of the act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 158–160; Dec. Dig. ⬤⟳118.]

2. STATUTES ⬤⟳168—EFFECT OF INVALIDITY—MISAPPROPRIATION OF MONEY OF STATE BANKS.

The unconstitutionality of the act in this respect reinstates sections 905 and 907 of the Revised Statutes of 1870, relating to embezzlement and breach of trust.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 244; Dec. Dig. ⬤⟳168.]

O'Niell, J., dissenting.

## On Rehearing.

3. CRIMINAL LAW ⬤⟳1015 — APPEAL — DISMISSAL—GROUND.

Where three criminal charges, similar in character, against the same defendant, bearing the same caption, with different numbers on the docket of the trial court, but involving the same questions of law, are argued together, and the trial judge hands down an opinion and decree, bearing the caption common to the three cases, with the docket number of each, which is intended and accepted as quashing the indictment in each case, and the motion and order of appeal bear a similar caption and numbers, the defendant has no standing to dismiss the appeals, or either of them, on the ground that there is no appeal, or but one, since he does not, and cannot well deny the application to each of the cases of the opinion and decree as rendered by the judge and entered upon the minutes by the clerk, and the state has appealed, as it had the right to do, from the decree as so rendered and entered. Moreover, if there be any irregularity in the appeal, resulting from the situation, as thus brought about, the consequences are not to be visited upon the appellant.

There was, however, no greater irregularity in deciding and appealing the cases, as was done (a separate transcript having been brought up in each case) than there was in arguing them together, since the convenience of the litigants was equally subserved, and the cases no more lost their respective identities for the one purpose than for the other.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. ⬤⟳1015.]

4. STATUTES ⬤⟳138, 141—AMENDMENT—REFERENCE TO TITLE.

A statute, or section of a statute, may be revised or amended by reference to its title, but in such case it must be re-enacted and published at length. An amendment, by reference to the title of the amended statute, must, however, in any case, be germane to the matter amended, and it is no answer to the objection that it is not so to say that matter to which the amendment would have been germane might originally have been included in the amended statute under the title borne by it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 48, 198, 205, 206, 209; Dec. Dig. ⬤⟳138, 141.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

W. H. Boylston was indicted for embezzle-

ment, a motion to quash the indictment was sustained and the State appeals. Reversed.

R. G. Pleasant, Atty. Gen., and Wm. A. Mabry, Dist. Atty., and S. I. Foster, Asst. Dist. Atty., both of Shreveport (G. A. Gondran, of New Orleans, of counsel), for the State. J. C. Pugh & Son and Alexander & Wilkinson, all of Shreveport, for appellee.

LAND, J. The defendant was indicted for embezzling, for the use of one J. R. Brown, the money of a certain state branch bank, contrary to paragraph 7 of section 1 of Act 189 of 1902.

Defendant first moved to quash the indictment on the ground that it set forth no crime or offense known to the laws of the state of Louisiana.

Defendant then, without abandoning said motion, moved to quash the indictment on the further ground that Act 189 of 1902, particularly the seventh paragraph, is unconstitutional and void, for the reason that said act does not express the object in its title, as required by the Constitution of the state, and, if it does, which is denied, that the said act has two separate and distinct objects, likewise in violation of article 31 of the Constitution of this state.

This motion was sustained by the trial judge, and the accused was ordered to be discharged, and the state has appealed.

[1] The judge a quo, in a well-considered opinion assigned his reasons for holding paragraph 7 of section 1 of Act 189 of 1902 to be unconstitutional.

The original act of March 15, 1855 (Acts 1855, No. 166) is entitled "An act to establish a general system of free banking in the state of Louisiana." Act 150 of 1888 is entitled "An act to amend and re-enact section 3 of act of March 15, 1855."

Act No. 95 of 1892 is entitled "An act to amend and re-enact Act No. 150 of the ses-

sion of 1888." And Act No. 189 of 1902 is entitled "An act to amend and re-enact Act No. 95 of the session of 1892," amending and re-enacting Act No. 150 of 1888, amending and re-enacting section 3 of act of March 15, 1855 entitled, etc.

Act No. 166, approved March 15, 1855, is entitled "An act to establish a general system of free banking in the state of Louisiana," and contains 41 sections.

Section 3 relates exclusively to the powers of banking corporations to be formed and organized under the provisions of the act. There is no section of this long statute which provides a penalty for the embezzlement of the money or funds of banking corporations. The penalties imposed relate solely to violation of banking rules. Embezzlement and breach of trust in general was denounced in section 81 of Act No. 120 of 1855, entitled "An act relative to crimes and offenses," and embezzlement of money belonging to banks or deposited therein was specially penalized by section 83 of the same act.

These two sections were incorporated in the Revised Statutes of 1870, and there appear as sections 905 and 907.

The titles of the amendatory acts of 1888, 1892, and 1902 limit their scope to the amendment of section 3 of Act 166 of 1855, relating exclusively to the powers of banking corporations, and give no notice whatever of a purpose to add a penal section to that statute, or to amend sections 905 and 907 of the Revised Statutes of 1870. Hence Act 189 of 1902 is a plain violation of article 31 of the Constitution of 1898.

[2] Conceding the unconstitutionality of paragraph 7 of section 1 of Act 189 of 1902, sections 905 and 907, Rev. St. 1870, would remain as the existing legislation on the same subject-matter. State v. Dalcourt, 112 La. 423, 428, 36 South. 479; City of Shreveport v. Kahn, 136 La. 371, 67 South. 38. Hence the case should be remanded for a re-

trial of the first motion to quash and for further proceedings according to law.

It is therefore ordered that the judgment below be affirmed as to the unconstitutionality of paragraph 7 of section 1 of Act No. 189 of 1902, but otherwise be reversed, and the case remanded for further proceedings according to law.

See dissenting opinion of O'NIELL, J., 69 South. 861.

### On Rehearing.
### Motion to Dismiss Appeal.

MONROE, C. J. [3] In the opinion heretofore handed down, the court failed to pass upon a motion, filed by defendant, to dismiss the appeal on the ground that:

"Under said appeal the state attempts to bring up three cases against defendant when the same were not consolidated for trial in the lower court and no separate order of appeal was taken therein."

Since the rehearing was granted, defendant has filed another motion to dismiss, in which the grounds originally relied on have been stated more specifically and the additional ground is set up "that the state did not except to the ruling of the court sustaining the motion to quash," which additional ground we dispose of by saying that, even though it should be conceded that it is urged in time, and that it was necessary that the state should specifically except to the judgment from which it has taken the appeal, the bill of exceptions is to be found in the transcript.

The transcript further shows that, in a proceeding which was given the number 14927 of the docket of the district court, the grand jury of Caddo parish, on November 20, 1914, returned a bill of indictment, in which it charged that defendant—

"did willfully, feloniously, knowingly, and with intent to cheat, wrong, and defraud, embezzle, appropriate, and convert to the use and benefit of one J. R. Brown the sum of $650, the money, property, or funds of the Oil City Bank, a branch of the Continental Bank & Trust Company, a duly incorporated banking institution, organized under the laws of the state of Louisiana, * * * which he, the said Boylston, was in the employ of, and acting as the cashier of said branch bank, * * * which said funds had been intrusted to the care and keeping of the said Boylston. * * *"

And there is a second count charging J. R. Brown with aiding and abetting, etc.

Defendant moved to quash the indictment on the ground that it charges no offense known to the law, and the further ground (by separate motion):

"That Act 189 of 1902, particularly the seventh paragraph thereof, is unconstitutional and void, for the reason that said act does not express its object in its title, * * * and, if it does, * * * that then said act has two separate and distinct objects, * * * in violation of article 31 of the Constitution of the state."

It appears that another indictment was returned on the same day (November 20, 1914), in a proceeding which was given the number 14928 on the docket, and which contained a charge practically identical in terms with that above quoted, save as to the date and amount of the alleged conversion and the fact that it alleges that the money was converted to the use of the firm of Brown & Boylston, composed of defendant and John R. Brown; and it also appears that an indictment had previously been returned against the defendant, Boylston, in a proceeding numbered 14543 of the docket, containing a charge practically identical in terms with the charge above quoted, save as to date and amount of the alleged conversion. It also appears that the same questions of law were presented in the three cases, and that they were argued together, though not consolidated, and that, thereafter the trial judge handed down an opinion and decree, sustaining the identical motion to quash which had been filed in each case, and bearing the title common to all, with the docket number of each case, thus:

"State of Louisiana v. W. H. Boylston.
"Nos. 14543, 14927, 14928.
"District Court, Caddo Parish, Louisiana."

The bill of exception to the ruling so made and the motion and order of appeal therefrom bore similar headings, and the text of the motion for appeal reads:

"*In the above numbered and entitled causes* [italics by the court], now comes W. A. Mabry, district attorney, and moves the court to grant an appeal, on behalf of the state of Louisiana, to the honorable the Supreme Court of said state, returnable according to law. Wherefore your mover prays that said appeal be granted, and for general relief."

Each of the transcripts, as filed in this court, contains a copy of the opinion and decree of the district court, of the bill of exception, and of the motion and order of appeal, as thus described, and each contains a clerk's certificate, headed, "State of Louisiana; Parish of Caddo," to the effect:

"That the within and foregoing pages * * * contain true and correct copies of all orders made, papers filed, and proceedings had, to wit, in suits Nos. 14543, 14927, and 14928, entitled State of Louisiana v. W. H. Boylston, as the same appear on the docket of the First Judicial District Court, Section B."

It is evident, therefore, that, as the opinion and decree were identified, by title and number, with, and were intended to apply alike to the three cases which had been argued together, and in which the same motion to quash had been sustained, so the motion and order of appeal, similarly identified, were intended to be applied to the opinion in its relation to the three cases, respectively; and, as defendant does not, and cannot, well deny the application of the decree to each of the cases, he cannot be heard to deny the application of the motion and order of appeal to the decree, as so applied to the cases. Moreover, the state appealed, as it was entitled to do, from the judgment, as entered upon the minutes, and it was so rendered and entered by the judge and the clerk, respectively, from which it follows that, if there were any defect, error, or irregularity in the appeal, resulting from the situation as thus brought about, the consequences are not to be visited on the appellant. C. P. art. 898. We do not consider, however, that there was any greater irregularity in deciding and appealing the cases, as was done, than there was in arguing them together, since the convenience of the litigants was equally subserved, and the cases no more lost their respective identities in one instance than in the other. The cases of "Dayries, claiming," etc., 19 La. Ann. 73, and Mackin v. Wilds, 106 La. 1, 30 South. 257, to which we are referred, presented totally different conditions, and have no bearing upon the situation here disclosed.

The motion to dismiss the appeal should therefore be denied.

### On the Merits.

Article 31 of the Constitution provides that:

"Every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in its title."

And the well-understood purpose of those provisions is that the title of a law, as read in the General Assembly and as published to the world, shall convey to those who may hear it read, or read it, a reasonably correct and adequate idea of the general character of the legislation covered by it, and shall not mislead, surprise, or confuse such persons, or others, into supporting, or acquiescing in, the enactment of a law concerning which they are wholly misinformed, or uninformed, or which deals with a variety of subjects which may be unrelated to each other and incongruous.

"The title of a law [the court has said] is not to be strictly or technically interpreted; if it states the object, according to the understanding of reasonable men, it satisfies the Constitution." Mun'y. No. 3 v. Michoud, 6 La. Ann. 605.

Thus it has been held that the title of an act which declares its object to be to incorporate a city or town, fix its boundaries, and provide for its government sufficiently declares the purpose to authorize the levy

and collection of municipal taxes. Slack v. Ray, 26 La. Ann. 675; City of Shreveport v. Jones, 26 La. Ann. 708. It has also been held that the announcement, in the title of an act, of the general subject legislated upon may be a sufficient declaration to cover any specific object which is germane to that subject, and the titles, "An act relative to crimes," and "An act relative to slaves," have been held sufficient, respectively, to cover provisions denouncing and penalizing crimes generally, and crimes committed by slaves. State v. Jumel, 13 La. Ann. 400; State v. Henry, 15 La. Ann. 297.

[4] Again, where the object of an act is to amend a statute already in existence, or to amend a particular section of a statute, the title of which declares its object, it is sufficient that the title of the amending act shall refer to the statute to be amended by its title, and declare the object to be to amend and re-enact such statute or section, but in such case, the statute or section to be revived or amended must be "re-enacted and published at length," and the matter contained in the amending act must be germane to that contained in the other. Arnoult v. New Orleans, 11 La. Ann. 56, 57.

"A supplemental or amending act should indicate clearly in its title the act amended, and may be valid when referring, by chapter and section number only, to the existing law. An amending act should set out its purpose generally, and must be germane to the original act of which it is an amendment." 36 Cyc. pp. 1029, 1030, 1031.

"While it is true that new legislation upon a *distinct and different subject-matter* cannot be incorporated into an existing statute *by way of amendment* without mention being made of its object in the title, it is equally true that any subject-matter that is germane to the original text may be thus incorporated without being open to objection." Williams v. Western Star Lodge, 38 La. Ann. 626.

"It is true that it had been often held that the title of a statute amending and re-enacting a certain article of the Codes, or a certain section of the Revised Statutes, sufficiently expresses the legislative intention. But such amendment should be limited in its scope to the subject-matter * * * to be amended. In such case the introduction of any new substantive matter not germane or pertinent to that contained in the original sections cannot be regarded as amendment thereto, but must be regarded as independent legislation upon a matter not expressed in the title of the act, and therefore void. The amendment of an act in general, or a particular section of an act, ex vi termini implies merely a change of its provisions upon the same subject to which the act or section relates (citing State v. Sugar Refining Co., 106 La. 565, 31 South. 181)." Beary v. Narrau, 113 La. 1038, 37 South. 961.

See, also, State v. Tolman, 124 La. 630, 50 South. 607, 134 Am. St. Rep. 514.

It will be remembered that Act 166 of 1855 is entitled "An act to establish a general system of free banking in the state of Louisiana," that it deals exclusively with civil matters, and that neither its section 3, nor any other section, defines or penalizes any crime or offense. It is clear, therefore, that the title (of Act 150 of 1888) "An act to amend and re-enact section 3 of Act of March 15, 1855, entitled "An act to establish a general system of free banking in the state of Louisiana," does not, within the meaning of the established doctrine upon that subject, express the purpose to inject into section 3 of Act 166 of 1855 a provision making it a felony for any officer, clerk, or agent of a bank to appropriate money or property to his own use, or to the use of others, since that provision is not germane to the subject-matter either of the section 3 or of the act in which it is contained. And as Act 95 of 1892 and Act 189 of 1902 rest, in that respect, upon Act 150 of 1888, they fall with their foundation.

It is said, however, that such a provision might originally have been included in Act 166 of 1855 without changing the title of that act, and that, what might have been put in originally may be added by way of amendment. Conceding it to be true, however (for the purposes of the argument only), that the title, as it stood, would originally have covered such a provision, the fact is that the provision was not put into the act, and hence that the act which the legislators of 1888

proposed to amend was an act dealing with matters of purely civil concern, into which they attempted to inject, with nothing in the title of the amending act to indicate such purpose, a provision making it a felony for a clerk, officer, or agent of a bank to appropriate any money or property to his own use, or to the use of another, and imposing a heavier penalty therefor than was imposed by the existing law, for a similar offense, committed by any clerk, officer, or agent of *any corporation or company, public, or private.* We take it, however that the reason that an act, or part of an act, may be amended by reference to its title, and by its re-enactment and publication, is that the legislators and the public at large are presumed to have some knowledge of an existing law, and hence, when their attention is called to such a law, by the reference to its title, contained in an amending act, they know, within certain limits, what they may expect; i. e., other provisions, germane, or relevant, to those which are to be amended. In the definition of the word "germane," as given in Webster's New International Dictionary, we find the added note: "An amendment must be germane. Barclay (Digest)."

But we do not understand that one is expected to indulge in conjectures as to what might have been included in a statute, under a particular title, but which the lawmakers omitted therefrom, and hence, as it appears to us, the question whether an amendment is germane depends, not upon what the statute to be amended might have contained, but upon what, in fact, it does contain, and it is no answer to the objection that the amendment is irrelevant to the matter that it purports to amend to say that other matter, to which it would be relevant, might have been included in the statute to be amended.

In the opinion heretofore handed down, it is held that the unconstitutionality of the amendment here in question leaves sections 905 and 907 of the Revised Statutes in force, and the case is remanded for further proceedings, but we failed to take any action in regard to the further ruling of the trial judge, quashing the indictment; and our former decree must be amended in that respect.

It is therefore ordered and adjudged that the motion to dismiss the appeal herein be denied; that the decree heretofore handed down be reinstated and made final, in so far as it affirms the ruling of the trial judge, holding paragraph 7 of section 1 of Act 189 of 1902 to be unconstitutional, and in so far as it remands the case for retrial of the motion to quash, first filed, and for further proceedings according to law, and that said decree be amended in so far as that it is now decreed that the ruling of the trial judge, quashing the indictment, be reversed.