FRUGÉ, Judge.
Mrs. Geraldine R. Lewis, plaintiff-app el-lee, brings an action against the State of Louisiana, defendant-appellant, to try title in and under an 80.90 acre tract of land located in Calcasieu Parish, Louisiana. The trial court rendered judgment in favor of plaintiff, declaring her to be the true and lawful owner of the mineral rights in question and enjoined and prohibited the State of Louisiana from asserting any claim whatever in or to said minerals; the State has taken an appeal from this judgment.
A previous suit (236 La. 578, 108 So.2d 516) was dismissed by the Supreme Court for lack of legislative consent, after it was found that the State’s lease, sought to be cancelled as a cloud on plaintiff’s title had, in effect, been erased from the records by the filing of a release thereof on the part of the lessee. Subsequently, plaintiff secured passage of Act No. 11 of the Legislature of 1959 (Tr. 13-17), giving the State’s consent to be sued herein. Since neither plaintiff nor the State is in possession of the minerals in question or the land under which they lie, plaintiff’s suit is one to try title under the provisions of LSA-R.S. 13:5062 (since repealed, Acts 1960, No. 32, Sect. 2, and replaced by C.C.P. arts. 3651 et seq.).
Plaintiff’s claim to the minerals in question is based on the chain of title beginning with Patent No. 13,291 issued to Frank J. Pierson by the Governor and Register of the State Land Office under date of January 6, 1943, without any reservation of the minerals under the property thereby *347 conveyed. The patent was issued after a location made by Pierson on December 30, 1942 of the land here involved. The location was made under Louisiana Land Warrant No. 196, issued to Pierson on June 12, 1942 in lieu of defective Patent No. 11,182 granted to one Philip Simms on March 22, 1862 for cash consideration of $1421.95. Certified copies of both of the patents in question, together with all pertinent documents, including the location notice and request for patent filed by Pierson with the Register, were annexed to the petition, and have been placed in evidence as Exhibits “P-3” through “P-7” (Tr. 23-25). Also annexed to the petition and placed in evidence as Exhibits “P-1,” “P-2,” “P-8,” “P-9,” “P-10” and “P-11”, are copies of (1) the proceedings (Tr. 16-20) by which the subject property was conveyed, along with other land, to the State of Louisiana by the United States, as “swamp lands,” (2) deeds (Tr. 42-51) necessary to round out the chain of title to John B. Daigle, plaintiff’s deceased husband, and (3) a mineral lease (Tr. 27-32) executed by the State Mineral Board in favor of Pan American Production Company, et al. and affecting the property here involved. By stipulation of the parties (Tr. 40-41), it is shown further that (1) plaintiff is the surviving wife of John B. Daigle, deceased, and, as such, has been placed in possession of the property here involved, (2) there has been no oil, gas or other minerals produced from, or any drilling operations conducted on, the property since the issuance of Patent No. 13,291 on January 6, 1943 and (3) neither plaintiff nor defendant is now or has been, in possession of said property.
By specific allegation (Tr. 10), plaintiff invoked the prescription of six years provided by LSA-R.S. 9:5661 as barring the right of the State to attack the validity of Patent No. 13,291 and its effect in conveying the mineral rights here involved.
The State first filed exceptions of no cause or right of action (Tr. 33-34) and a plea to the constitutionality (Tr. 35-36) of the acts of the State officials in making conveyance of the land in question without a reservation of the minerals thereunder in compliance with the prohibition set forth in Article IV, Section 2, of the Louisiana Constitution of 1921, LSA. In due course, the exceptions and plea were overruled (Tr. 2).
In its answer (Tr. 37-39), the State set up the defenses that (1) Patent No. 13,291 was issued in contravention of Article IV, Section 2 of the Louisiana Constitution of 1921, and is, therefore, null and void, (2) the State still holds title to the land in question because it was not subject to patent, (3) the land granted by Patent 13,291 was not of the same classification as the land described in the patent issued to Philip Simms on March 22, 1862 and (4) plaintiff’s rights to a patent under Warrant 196 and to Patent 13,291 have expired, and her claim has prescribed. Though urged in the Court below, the last three of these defenses have been abandoned here by defendant, who, in its brief (Page 2), now concedes that “Plaintiff’s title appears satisfactory other than insofar as Article 4, Section 2 of the Constitution of 1921 requires reservation of minerals on land sold by the State,” and only argues that, because of this constitutional requirement, no conveyance of the minerals was, or could have been, made.
We quote in extenso from the written reasons assigned by the trial judge since they succinctly and accurately set out and summarized the essential facts of this case as follows:
“The undisputed facts reflect that on April 16, 1862, the State of Louisiana, through its proper officials, issued a patent to Philip Simms granting him a patent upon certain lands and for which patent Simms paid to the State of Louisiana a consideration of $1,421.95. It was later discovered that the lands for which the Simms patent had been issued could not be transferred by the State of Louisiana since it had no title to the land described therein. Pursuant to the authority granted by Act *348 No. 104 of 1888, the State of Louisiana, issued to Frank J. Pierson a Land Warrant No. 196 dated June 12, 1942, which warrant was issued to Pierson in lieu of the patent which previously had been issued to Philip Simms for land which the State did not own. On January 6, 1943, a patent was issued by the State of Louisiana to Frank J. Pierson who had located the property in question under the land warrant previously mentioned and which is the subject matter of this litigation. By subsequent transfer and inheritance rights the plaintiff acquired the Frank J. Pierson title. A copy of the Frank J. Pierson patent was introduced in evidence, * * * which reflects that the property was located and was transferred by patent to Frank J. Pierson, which transfer did not reserve the mineral rights to the State of Louisiana, but instead, had the following quotation, ‘See decision of the Supreme Court reported in 173 La. 215 and reaffirmed by the Supreme Court on March 3, 1941.’ This case referred to was the case of State ex rel. Hyams’ Heirs v. Grace, Land Office Register, et al., upon which case the State of Louisiana, through its Governor and Register of the State Land Office, depended for its authority to transfer the mineral rights along with the land even though the Louisiana Constitution of 1921, Article 4, Section 2, required the reservation of mineral rights on property sold by the State.”
In rendering judgment for plaintiff the trial judge found that:
“When the original patent was issued on March 22, 1862, to Phillip Simms covering certain lands for which he paid a valuable consideration, a real right came into existence. This real right vested in Phillip Simms, his heirs and successors. Vested rights and the privileges pertaining thereto continued to exist even though the land described in the patent was not available for transfer by the State of Louisiana to the patentee. These rights and privileges were kept alive and in existence by virtue of Act No. 104 of 1888. * *
⅜ ⅝ * ⅝ ⅜ *
“Under the provisions of that act, the patentee, his heirs or assigns have the right to have the Register of the State Land Office issue a warrant for the same amount of land for which the original patent was issued. If those parties requested a warrant, assuming they were qualified under the provisions of Act No. 104 of 1888, and the Register refused such warrant, they would have a right of mandamus ordering the Register to so issue the warrant. The State is then recognizing, through the land warrant, the right of the parties to further develop their existing rights and privileges originally brought into being by the issuance of the original patent and subsequent legislation pertaining thereto. Until the lands are located, the warrant is a legislative privilege allowing them to search for such lands and to get a patent therefor when so located. These rights and privileges continued to exist under the laws of this State until the adoption of Act 141 and 142 of the Legislature of 1942. This Court finds that the rights and privileges which came to life by virtue of the original patent continued to exist and was not abrogated nor modified by the provision of the 1921 Constitution in question. This is true even though the land warrant may have issued subsequent to the adoption of the 1921 Constitution.
“After a review of the Hyams case and the other cases on the subject matter, this Court concludes that such was the intent of the legislature and the framers of the 1921 Constitution of Louisiana.”
The trial judge decided that the case of State ex rel. Hyams’ Heirs v. Grace, 197 La. 428, 1 So.2d 683, did indeed justify the transfer of the minerals in question. The *349 State, on appeal, strongly urges that our brother below has misinterpreted this case, just as the Register of State Lands did in 1943, and reasserts its position that the purported transfer of the land to Pierson without any reservation of the minerals thereunder was an unconstitutional act on the part of the Governor and the Register of State Lands, in view of Art. 4, Sect. 2 of the constitution, and hence null and void and of no effect, thus leaving title to the minerals vested in the State.
When defendant says that the situation here comes within the constitutional requirement that minerals be reserved on all property sold by the State, he (1) misinterprets the decision of the Supreme Court in State, ex rel. Hyams’ Heirs v. Grace, 197 La. 428, 1 So.2d 683, where it was held in an almost identical situation that the constitutional requirement did not apply, (2) disregards the fact that we are here concerned not with a sale of property by issuance of the 1944 patent, but with a sale erroneously made by the State for the substantial sum of $1,421.95 cash, in the year 1862, long prior to the adoption of the 1921 Constitution, (3) ignores the rule that limitations on the right to alienate property must be strictly construed and (4) says erroneously that a statute can be modified or amended by implication.
The pertinent facts of the Hyams case supra and the reasoning and ruling of the Court are shown in the following quotation from that decision:
“On February 10, 1863, Henry M. Hyams purchased from the State 404.-63 acres of land in Sections 3 and 10, T. 14 N., R. 3 E., receiving patent No. 11,783 under certificate No. 23,907. * * * It developed that the state did not own this land because the United States had already disposed of it. In 1888 the Legislature enacted Act No. 104 of 1888 which authorized the Register of the Land Office to indemnify the holders of patents issued for lands which the state did not own by issuing lieu warrants or scrips to be located on lands of the same class or character as that upon which the patents were issued in error. * * * The Register of the Land Office issued to the heirs of Henry M. Hyams, who were then of the age of majority, warrant No. 168 dated December 28, 1917. ⅜ ⅜ *
* * * * ⅝ ⅜
“ * * * This suit was instituted because the Register of the Land Office rejected the application made to locate a portion of the warrant of March 23, 1938, seeking to compel the issuance of a patent on 280 acres of land.
* ⅝ * ⅜ ⅜ ⅛
“The Act, under which the lieu warrant involved herein was issued, contemplates a future location of the warrant on lands of like character belonging to the State without designating any particular time within which it can be done. In our opinion this clearly shozvs that it was contemplated that the warrant could be located any time the grantee could find land of like character to locate it on. If it had been intended otherwise some language would have been used in the Act to that effect.
“Counsel for the appellants take the position that the patent cannot be issued without a reservation of the mineral rights under Section 2, Article 4 of the Constitution of 1921, the pertinent part of which reads as follows:
* * In all cases the mineral rights on any and all property sold by the State shall be reserved, except where the owner or other person having the right to redeem may buy or redeem property sold or adjudicated to the State for taxes. * * * ’
“ * * * The provision relied on in our opinion applies to property sold by the State subsequent to the adoption of this constitutional provision. A con- *350 stiiutional provision should be construed as having a prospective effect only unless it exhibits the intention of its framers to be given a retrospective effect. Succession of Parham, et ux., 51 La.Ann. 980, 25 So. 947, 26 So. 700. There is no language used therein to-indicate that this constitutional provision is to apply to transfers of property under lieu warrants previously issued under Act No. 104 of 1888. It is our opinion it deals with future sales of land made by the State and there is nothing contained therein to suggest that it was intended to destroy or impair a contract previously entered ⅝-to by the State. The framers of the Constitution cannot be credited with such an intention.” (Emphasis added.)
Thus we find that our Supreme Court has (1) recognized the application of Act 104 of 1888, LSA-R.S. 41:381 to situations substantially identical with that here involved, (2) given full effect to the State’s recognition by the passage of Act 104 of 1888 of its contractual obligation to pat-entees in cases where the patent was ineffective because of the State’s non-ownership of the property intended to be patented and (3) held that property patented since the adoption of the 1921 Constitution on locations made under warrants received in lieu of defective patents issued prior to 1921 divests the State of minerals under the property conveyed, regardless of the constitutional requirement in question.
It is true, of course, that in the Hyams case, supra, the lieu warrant had been issued prior to 1921, while in this case the warrant was issued subsequent to 1921. However, according to the quoted reasoning of the Court, this factual difference should not place Mrs. Lewis’s situation beyond the ruling of the Hyams case, since the decision there was pitched on the contractual obligation of the State to the heirs of the original patentee, who died before the adoption of Act 104 of 1888. The lieu warrant in that case, having been issued to the Hyams heirs prior to 1921, the Court referred only to the contractual obligation growing out of the State’s issuance of the warrant. Careful analysis of the Court’s opinion, though, reveals quite clearly that the decision would surely have been the same even if the lieu warrant had not been issued until after the adoption of the 1921 Constitution. This we say because (1) the real obligation of the State was created by its issuance to Hyams, in consideration of the price paid by him, of the ineffective patent of 1863, which vested him with right to receive from the State the land therein described or the acceptable equivalent thereof, (2) this ■ obligation on the part of the State was recognized by the passage of Act 104 of 1888, which specifically provided relief for wronged patentees in the already vested right there recognized to claim and secure lieu warrants for location on lands of like character and (3) the Court in the Hyams case specifically held that the constitutional requirement that minerals be reserved “applies only to property sold by the State subsequent to the adoption of this constitutional provision.”
Let us now look to see whether or not the Pierson Patent was a Sale. Certainly, when an individual executes a deed to property, he incurs the definite obligation to make delivery of the property, and where that is not possible, becomes liable for damages for breach of contract. And it is the universal rule that States are subject to the same obligations as individuals in such cases. In C.J.S. Vol. 81, Pages 1107, 1112, 1114, Verbo, States §§ 120, 122 and 124, we find rules on this point, which we quote, respectively, as follows:
“The contracts of a state with individuals are to be construed in the same manner and are subject to the same rule of law as the contracts of private persons, and whatever is essential to enjoyment of the thing granted will necessarily be implied.
♦ * * ⅜ *1
*351 "A state has no more right than an individual to modify or rescind a contract entered into by it, unless such right has been reserved, particularly where the state is itself in default and the other party cannot be placed in statu quo.
******
“The state, in entering into contracts, lays aside some of its attributes of a sovereign, and is bound to observe the same rule of conduct in performance of its contractual relations with its citizens as it requires them to observe.”
The State, as we have already stated, recognized its obligation in such cases by its passage of Act 104 of 1888, from the effective date of which the holders of patents for lands not owned by the State had the right, until the repeal of the Act to claim lieu warrants and secure patents thereunder “on lands of the same class or character as that upon which the patents were issued in error.” So the obligation of the State was created and recognized or acknowledged by legislative act, long before the issuance of the lieu warrant in either the Hyams case or the Lewis case; and the issuance of the warrant in each case was actually nothing more than the performance of an administrative act required by the 1888 statute in order to fulfill the original obligation created by the issuance of the ineffective patent.
It cannot, therefore, be said that the property involved here is property “sold by the State” subsequent to 1921, when it is actually property delivered in final consummation of a sale made in 1862 and in fulfillment of the obligation then assumed by the State which accepted the price from the patentee, Simms, who, together with his heirs, was without the use of it for some eighty years.
It is apparent that the Court had all of this in mind when it said, “The provision relied on in our opinion applies to property sold by the State subsequent to the adoption of this constitutional provision. * * * It is our opinion, it deals with future sales of land made by the State and there is nothing contained therein to suggest that it was intended to destroy or impair a contract previously entered into by the State. The framers of the Constitution cannot be credited with such an intention.”
It is apparent, also that the Register of Land Office so interpreted the views expressed by the Court, when she issued Lieu Warrant No. 196 and Patent No. 18,-291 without any reservation of minerals and with the inclusion in the latter of (1) the provision that the land was conveyed to the patentee “with all the rights, titles and privileges, thereunto belonging” and (2) specific reference to the “decision of the Supreme Court in 173 La. 215 [136 So. 569] * * * reaffirmed by the Supreme Court on March 3, 1941.” The decision reported in 173 La. 215 is State ex rel. Hyams’ Heirs v. Grace, also reported in 136 So. 569, and the decision of March 3, 1941, is the case of the same title reported in 197 La. 428, 1 So.2d 683 and already hereinbe-fore discussed. In addition to the strong supporting language already quoted from the latter of these two cases, we find the Court in the earlier case, also favorable to the patentee, pitching its decision on the reasoning quoted from State ex rel. Armistead et al. v. Grace, 129 La. 694, 56 So. 641; in the Grace case (State ex rel. Hyams’ Heirs v. Grace, 173 La. 215, 136 So. 569, 570), the court stated:
“ * * * The relators in that case [State ex rel. Armistead et al. v. Grace, supra] sought by mandamus to compel the register to issue to them land patents which they had applied for, but which they had not received when Act 215 of 1908, annulling all pending applications for land patents, went into effect. This court ordered the register to issue the patents to the relators because they had done everything which the law required them to do to obtain their patents, and because it was there *352 fore the mandatory duty of the register to issue the patents, before the act of 1908 went into effect. In so deciding, the court said:
“ ‘In construing statutes, it is the duty of the courts to start out with the prima facie presumption that it is not the intention of the Legislature to annul contracts entered into by the citizen with the state; and all the more must it be presumed that the Legislature has not attempted the vain, because unconstitutional, task of depriving the citizen, without compensation being first made, of his property. When the citizen has done everything which the law says he shall do, has paid into the state treasury all that he is required to pay, * * * the state could neither in good conscience nor under the Constitution declare such property a part of the public domain and deprive the entryman of his possession and title. This view is sustained by Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363.’
“ * * * The act [215 of 1908~\ did not only annul all applications for the entry or purchase of public lands then on file in the land office, where the certificate or patent had not already issued, but it deciwed that thereafter no one could purchase or enter lands belonging to the state, or to any of the levee boards, except by making a deposit of $15 to procure a sale of the land at public auction, and by making the highest bid at the auction sale. * * * Although the question is not expressly propounded in this case, our opinion is that the provisions of Act 215 of 1908 are not appropriate to an application to enter on a lieu warrant, or scrip, land of the same class or character of the land for which a patent was issued erroneously and after-wards canceled.” (Emphasis added.)
Certainly, we have'in the instant case a situation that calls even more strongly than that in the Armistead case for the application of the above quoted rules already followed in the Hyams cases. This we say because (1) the price was paid by the patentee Simms to the State, which received and retained the same, (2) Act 215 of 1908, LSA-R.S. 41:131 note provided a positive prohibition against subsequent entry or purchase of State lands, while the constitutional provision (Article 4 of Section 2) relied on by defendant only sets up a simple requirement with respect to future sales of State lands and (3) the warrants in the Hyams cases were issued in 1917, long after the passage of Act 215 of 1908, which, in spite of its strong prohibition, was held not to withdraw or restrict the rights granted by Act 104 of 1888.
 The language of Section 2 of Article 4 of the 1921 Constitution clearly limits its application to “property sold by the State.” As observed in State ex rel. Hyams’ Heirs v. Grace, 197 La. 428, 1 So.2d 683, “there is no language used therein to indicate that this constitutional provision is to apply to transfers of property under lieu warrants.” Moreover, the Section makes no reference whatever to Act 104 of 1888. All of this being true, Section 2 cannot be construed as modifying Act 104 or the obligation of the State therein recognized. This we say, because (1) the requirement that the mineral rights be reserved on property sold by the State is in derogation of the common right to alienate property, (2) laws, whether statutory or constitutional, creating any such limitation are subject to strict construction and (3) statutes cannot be modified or amended by implication.
As early as 1859, our Supreme Court recognized and applied in Richardson v. Emswiler, 14 La.Ann. 658, the rule that laws in derogation of such common right must be strictly construed. There, the court was concerned with the question of whether or not land pre-empted under a special act of 1851 was subject to the provisions, in a prior act of general nature, that all assignments *353 and transfers by a pre-emptor prior to issuance of patent were null and void. In holding that the right of the pre-emptor to alienate the' property in question was unaffected by the prior act which was strictly construed, the court said: “Laws in restraint of trade, or the alienation of property, are strictly construed, and are never extended to cases not within the express will of the lawmakers.”
In a prior decision, the Supreme Court, in Nicholson v. Thompson, 5 Robinson 367, 370, held that the rules which govern in the construction of a statute are applicable to the Constitution when it conflicts with an act of ordinary legislation, saying:
“The same rules, I apprehend, which govern in the construction of statutes, are applicable to the Constitution, zvhen supposed to conflict with an act of ■ordinary legislation. The only difference between the two, is, the superior paramount authority of the former. In comparing the act of 1805 with the Constitution, in order to test their consistency or repugnancy, I would adopt precisely the same rule, as if, by a new act of the Legislative Council, iristead of a Constitutional provision, it had been provided, that thereafter all officers, except the Governor and the Judges, should be removable by an address of two-thirds of the Council.” (Em-hasis added.)
This rule has been consistently followed ever since, as evidenced by the view expressed in Roberts v. City of Baton Rouge, 108 So.2d 124, 125, as follows:
“Appellant retailers’ contention that the constitutional exemption of gasoline from excise, license or privilege taxes should be regarded as having the legislative intent to exempt all activities relating to gasoline from any excise taxation whatsoever, fails to find support in the legislative history of the enactment and further overlooks the well recognized doctrine of statutory construction that cm exemption from taxation is strictly construed and must be clearly and unequivocally and affirmatively established. State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477; Meyers v. Flournoy, 209 La. 812, 25 So.2d 601; State v. Pittsburgh Testing Laboratory, 203 La. 147, 13 So.2d 710; Standard Oil Co. of Louisiana v. Fontenot, 198 La. 644, 4 So.2d 634.
⅜ * ⅜ * ⅝ ⅜
“Having thus found that the ‘excise, license or privilege tax upon gasoline’ prohibited to local governments by Article XIV, Section 24.1, La.Constitution, do not include non-discriminatory occupational license taxes measured by the sale of gasoline, our original decree herein is recalled and set aside; and the judgment of the District Court dismissing plaintiffs’ suit is affirmed.” (Emphasis added.)
In the case of State ex rel. Kemp v. City of Baton Rouge, 215 La. 315, 40 So.2d 477, 486, it was also specifically held that constitutional provisions are subject to the same rules of construction as statutes.
In applying Section 16 of Article 3 of the Constitution, prohibiting statutory amendments without re-enactments, the Supreme Court, in State ex rel Fournet v. Tugwell, 199 La. 18, 5 So.2d 370, 372, specifically held that statutes cannot be amended by implication, as follows:
“Counsel for respondents nevertheless maintain that a legislative enactment may be effectively amended by implication. They assert that, while the general rule is that an amendment to a pre-existing law must be express in order to be effective, this rule is not without exceptions and that an amendment by implication can occur when the terms of the later statute are so repugnant to the earlier law that they cannot stand together. And they say that a plain repugnancy exists between *354 Act No. 44 of 1940 and Section 7 of Act No. 26 of 1914. The text of Corpus Juris, Volume 59, Section 434, is relied upon as supporting the contention.
“This proposition cannot be sustained. Section 434 of Volume 59 of Corpus Juris is not pertinent here because the Constitution of Louisiana expressly prohibits the Legislature from amending a statute or any section thereof unless the law or section so amended shall be re-enacted and published at length. The section of Corpus Juris depended upon by counsel deals exclusively with the general rule which applies in states where there are no constitutional provisions prescribing the method by which statutes are to be amended. Section 446 of the same volume declares:
“ Tn a large number of states the Constitution provide in totidem verbia, or in substance, that no statute shall be amended by reference to its title only, but the statute amended or as amended shall be set forth and published or as amended shall be set forth and published at length.’
“In the footnote to the text, the Constitution of Louisiana is cited among others. This section further provides:
“ ‘These provisions have been uniformly held to be mandatory, and unless they are substantially complied with, the amendatory act is void and ineffective.’
“The cases of State v. Boylston, supra [138 La. 21, 69 So. 860]; Kohn v. Mayor, etc., of Town of Carrollton, 10 La.Ann. 719; Walker v. Caldwell, 4 La.Ann. 297; and In re Reilley, 2 McGloin 89, are cited as cases from Louisiana supporting the statement contained in the text.
“Hence, we hold that the provisions contained in Act No. 44 of 1940 cannot be considered as amending. Section 7 of Act No. 26- of 1914 for, if they should be so regarded, an unconstitutional result would be produced." (Emphasis added.)
These rules were recognized in the more recent case of Leiter Minerals, Inc. v. California Company, La.App. 126 So.2d 76, 81, where it was observed that:
“Statutes in derogation of common rights (one of which is the freedom of contract), must be strictly construed, and are not to be extended by implication. State ex rel. Maitrejean v. Demarest, 229 La. 300, 85 So.2d 522; Gamburg v. City of Alexandria, La.App., 85 So.2d 276.”
Thus we see that (1) the application of Section 2 must be limited strictly to property “sold” by the State since the adoption of the 1921 Constitution and (2) its provisions cannot be said to “qualify Act 104 of 1888,” as defendant would have it do. This being true, the obligation of the State recognized by the enactment of Act 104 of 1888 stands unaffected by Section 2, and lands located under a lieu warrant issued pursuant to said Act must be without limitation as to minerals. Any ruling to the contrary would leave unfulfilled the State’s obligation to furnish the warrant holder here with “lands of like character belonging to the State,” since there was no mineral reservation in the patent issued to Simms in 1862, and, obviously, land less the minerals thereunder is not land of the same character as land with mineral rights unaffected.
Constitutional Mineral Reservation Requirements must be construed strictly and they do not amend prior statutes by implication. Accordingly, a decision adverse to plaintiff would be in disregard of established rules of law, jurisprudence and equity.
We are of the opinion that the judgment of the trial court is correct. Having found *355 no manifest error in the trial court’s judgment, the said judgment is affirmed.
Affirmed.