SOMMERVILLE, J.
These three cases have been consolidated by consent, as they involve the same principles of law. The several relators seek the issuance of a writ of mandamus to the register of the state land office to compel him to issue to them patents to certain lands described in their petition, which they allege they have entered according to law and to which they are entitled to patents, but that the register has refused to issue the patents asked for, assigning as his reason that Act No. 215 of 1908 annulled all applications on file in his office, and that he is now without authority to issue patents to relators.
The appeal comes up to us upon the pleadings and upon agreed statements of fact.
The admitted facts in the Armistead Case are as follows:
“(1) That relator is in the actual possession of the property described in his petition, and has actually resided upon and cultivated said land since 1887. That since 1887 the said relator has placed on said property for its cultivation and for residential purposes improvements of the value of four hundred ($400) dollars.
“(2) That in October, 1902, relator filed a declaration with the register of the state land office, showing his actual possession, cultivation, and improvements of said property, which declaration was supported by affidavits of two disinterested witnesses in the manner and form required by Act No. 21 of 1886, and that the register executed a receipt showing the filing of said declarations and affidavits and furnished same to relator, and entered same in his records.
“(3) That said land was unsurveyed, and was dried lake land. That said land was surveyed in the early part of 1907 under orders of the state, and the procSs verbal, together with the necessary plats, were duly returned to the register of the land office, filed, and approved in the manner required by law.
“(4) That relator furnished the register of the state land office in 1907 with, full proof of a compliance on his part of section 4 of Act No. 124 of 1902, and which was accepted by the register. That the register refused to issue-a patent to relator for said land solely because of said Act No. 215 of 1908, and for no other-reason. It is admitted that the property herein involved is worth two thousand five hundred. ($2,500) dollars.”
The admitted facts in the Oarroll Case areas follows:
“(1) That relator, Oarroll, in 1899 purchased from the heirs of A. W. McCracken for the sum. of $1,000 the property described in his petition. That he believed his vendor was the owner thereof. That the property had some improvements on it at the time. That he thereafter placed on it improvements worth $500 and has continuously cultivated about 60 acres of it since 1899, and is in the actual possession of-it now.
“(2) That said land is what is known as dried lake land. That in the early part of 1906 the relator discovered that his title was invalid, and that the state of Louisiana owned this property-That on March 20th, 1906, said land being unsurveyed, he filed his declaration with the register of the state land office showing his actual possession of it and the value and character of the improvements placed thereon by him, accompanying which was the affidavit of two disinterested witnesses which supported the aforesaid declaration, all of which was in strict conformity with the requirements of Act No. 21 of 1S86, and duly entered by the register on his records.
“(3) That in 1906 the state of Louisiana caused said land to be surveyed, and procés verbal of said survey and the necessary plats were returned to and filed by the register of the land office, and duly approved in accordance with law.
“(4) That on or about May 15, 1907, one W. J. Stothart, under the terms of Act No. 107 of 1886, filed a contest against the entry of relator for the land described in his petition, and sought therein to cause the cancellation of the entry of the said Oarroll, relator, which after due trial was decided by the register of the state land office, on August 13, 19Ó7, in favor of relator, recognizing his rights to a patent to said land under section 6 of Act 124 of 1902, and that relator’s application for said land was duly filed.
‘■(5) That the said Oarroll furnished the register with full proof of a compliance on his part with the requirements of Act 124 of 1902 and other laws on that subject-matter. That thereafter, on June 25, 1908, the relator deposited with the proper. official of this state $351.75 in. full payment of the price of said land and all costs, and which was received for that purpose,, but that before a patent was issued the Legislature adopted Act No. 215 of 1908, approved July 8, 1908, and promulgated July 6, 1908, and that respondent refused, and still refuses, to issue the relator a patent for said property solely because of Act No. 215 of 1908, and for no other reason.”
*697 The admitted facts in the Dexter Case are .as follows:
“That John Dexter, relator, has been a citizen of this state all his life. That he is the head of .a family, and has had a family for the past 10 years; that the property described in'his petition is the only land he has ever sought to ac.quire from the state of Louisiana, and that he has never applied .for any public land belonging to the United States; that in 1904 he gave notice to the register of the land office of this .•state of his intention to apply to enter said lands under the homestead laws of this state; •that he caused to be published for the time and :in the manner required by law in the parish ■where said property is situated notice of his •intention to enter said land under the homestead laws of this state; that he exhibited to the said register full proof of said publication which accompanied the affidavit required by section 2 •of Act 64 of 1888 and that of the affidavit of two disinterested witnesses; that relator' fully •complied with said Act 64 of 1888; that on July 12, 1904, said register accepted said proof and application, and received from relator all of the costs and legal charges, and issued to him a certificate showing that all of the preliminary steps had been taken, which receipt is annexed hereto as ‘Exhibit A,’ all of which proceedings were in full compliance with section 2 of said Act 64 of 1888, and the register entered on his records the entry aforesaid; that relator has filed full proof with said register that he resided upon and cultivated said land for five years immediately succeeding the issuance of the aforesaid receipt, and that no part of said land had been mortgaged or alienated, all of which is true; that relator has complied with every requirement of Act 64 of 1888; and that the register of the state land office refuses to issue a patent solely because of Act No. 215 of 1908, .and for no other reason.”
Act No. 215 of 1908, p. 319, is:
“An act to annul all applications on file in ■the office of the register of the state land office for the entry or purchase of public lands from the state to which patent or certificate of entry has not issued, and regulating the manner and terms on which public lands may hereafter be sold, and prescribing the duties of certain officers regarding the same.”
Section 1 provides:
“That all applications for the entry or purchase of public lands of the state, now on file in the office of the register of the state land office to which patent or certificate of entry has not issued, be and the same are hereby declared null and of no effect.”
The other sections of the act provide .among other things, what shall be done •“when any person shall desire to enter or purchase lands belonging to the state of Louisiana, or to any of the levee boards thereof, subject to sale.”
If relators have already entered the lands for which they demand patents, it is clear that they are no longer applicants for entry, and the Act of 1908 does not apply; the declared purpose of that act being to annul all applications for entry, not to annul entries already made.
The best means of ascertaining what under the laws of Louisiana constitute an "entry” is to examine those statutes under which relators claim to have entered the lands in question. If-relators have done all that the law required them to do at the time of the performance -of the several acts necessary to constitute an entry, the entry is complete, and has become a property right which cannot be taken away except by due process of law. There is in the courts no power to force a state not to violate its contracts, but if the effect of a statute, adopted subsequent to that under which rights have been acquired, be to deprive a citizen by legislative fiat of his property rights, then the plain duty of the courts is to declare such act to that extent unconstitutional.
Section 2, Act 64 of 1888, p. 70, provides that the person applying for the benefit of this act shall publish in the locality where the land is situated his intention of entering land under the homestead laws of this state, giving a description of the land he proposes to enter at least 30 days prior to his application for entry. The evidence of the publication of this notice must be exhibited to the register at the time of filing application for entry, together with the affidavit of the applicant that he is' a person entitled to make a homestead entry, and that the entry is for homestead purposes, together with the affidavits of two credible witnesses that the land applied for is suitable for settlement *699 and cultivation, and, upon payment of the fees allowed by law, the applicant “shall thereupon be permitted to enter the quantity of land specified,” provided “that no patent shall issue therefor until the expiration of five years from the date of such entry.”
Section 5 provides that, under certain contingencies, “the entry shall be canceled and the land revert to the state.”
Act 107 of 1S86, p. 203, provides for the trial of contests of “entries of state lands.” Section 1 provides that in all cases where lands belonging to the state have been entered under laws “requiring settlement and cultivation of said lands as a part of the consideration received or to be received by the state for the same, and particularly when such entries have been made or shall be made under the homestead act, the graduation act, or the settlement or cultivation act,” it shall be lawful for any person having the legal qualification “to contest said entry or entries” in the manner pointed out by this section of the statute. The contestant must “file a written notice of contest In the state land office, describing said entry or entries by number, date, and the name of the entries, * * * setting forth the facts constituting the alleged invalidity of said entry or entries.” The contestant must pay to the register $2.50 “for each entry so contested.” It is made the duty of the register “to issue his notices to the said enterer or enterers, and deliver the same to the contestant.”
Section 2 provides for the trial of such contest before the register, and makes it his duty to “decide according to the principles of law and justice, and of this act, said entries or any of them, valid or invalid, and to affirm or cancel the same accordingly, and said decision shall be final so far as the executive department is concerned, unless an appeal be taken under existing laws.” The section then provides that, “if said entry or entries are deemed invalid and canceled,” the contestant for 60 days shall have the sole right “to enter” said lands, and the section further provides that the provisions of this act shall not apply in any case in which the state has issued a patent. In other words, the statute is exclusively concerned with contesting entries that have been made, but for which no patents have been issued.
Act 124 of 1902, p. 206, provides, so far as is pertinent to this discussion, for the entry and sale of public lands which were formerly the beds of lakes and other bodies of water. Section 4 provides that not more than 160 acres of the lands described in this act shall be entered by or sold to any one person under the provisions of this act, provided that any person making affidavit that he enters for his own use, and for the purpose of actual residence, settlement, and cultivation, and that, together with said entry, that he has not acquired from the state more than 160 acres, shall be allowed to enter 160 acres, provided that proof of actual residence, settlement, and cultivation shall be made at the state land office within 12 months after the entry shall have been made, and that, on failure to make such proof within that time, “said entry shall be canceled.”
Comparing the admitted facts in the cases of these several relators with the provisions of the laws under which they claim to have made their entries, it will be seen that at the time of the passage of Act 215 of 1908 relators were no longer applicants for entries. Their entries having already been made, they were applicants for patents only.
In construing statutes, it is the duty of the courts to start out with the prima facie presumption that it is not the intention of the Legislature to annul contracts entered into by the citizen with the state; and all the more must it be presumed that the Legislature has not attempted the vain, because unconstitutional, task of depriving the citizen, without compensation being first made *701 of his property. When the citizen has done everything which the law says he shall do, has paid into the state treasury all that he is required to pay, has under the faith and protection of the law expended years of his life in making very valuable property, which before the .expenditure of Ms labor upon it was of little value, the state could neither in good conscience nor under the Constitution declare such property a part of the public domain and deprive the entryman of his possession and title. This view is sustained by Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363.
Being thus of the opinion that Act 215 of 1908 by its very terms has no application to eases such as those presented by the relators —that is to say, to cases in which entries have already been made, and where there is nothing left to be done except the actual issuance of patents by the register — it is unnecessary to consider the contention of the register that these suits are in reality suits against the state. Since, then, under these views, it is the plain ministerial duty of the register to issue the patents applied for, the doctrine announced in the McEnery Case, 47 La. Ann. 110, 16 South. 647, does not apply.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed; and it is now ordered, adjudged, and decreed that the mandamus applied for by Armistead, Carroll, and Dexter be now made peremptory with costs, and that accordingly Frederick J. Grace, register of the state land office, be commanded to issue to Edwin D. Armistead a patent to the following described land:
Lot 8 of section 29; lots 8, 9, and fraction W. % of 7 and 10 of section 28; N. % of lot 7, less west portion, N. % of lot 6, and N. y2 of lot 5, of section 28 — all in township 13 N., range 10 W., containing 133 acres, more or less, as per survey made by W. S. Trechel, surveyor, in April, 1906, and duly returned at said time to the register of the state land office.
To Sterling P. Carroll a patent tó the following described property:
Lot No. 8 of section 33, and lot No. 11, lot No. 5, lot No. 10, less fraction W. % thereof, and south y2 of lots Nos. 6 and 7, of section 28, all in township 13 N., range 10 W., and containing 110 acres, more or less, as per survey made by W. S. Trechel, surveyor, under legal authority, on or about April 25, 1906, and duly returned by Mm to the honorable register of the state land office of Louisiana, to which reference is hereby had.
To John Dexter a patent to the following described property:
N. W. % of section 11, township 22 N., range 14 W.