(136 So. 569)

STATE ex rel. HYAMS' HEIRS v. GRACE, Register of State Land Office, et al.

No. 27553.

June 22, 1931.

Rehearing Denied July 17, 1931.

Judith Hyams Douglas, of New Orleans, and William Louis Albritton, Alvin R. Albritton, and C. C. Bird, all of Baton Rouge, for appellants.

Percy Saint, Atty. Gen., and Michael M. Irwin, Asst. Atty. Gen., for appellees.

O'NIELL, C. J.

This is a mandamus proceeding to compel the register of the state land office to prepare for the Governor's signature, and to require the Governor to sign and issue to the relators, heirs of Henry M. Hyams, deceased, a patent for a tract of land containing about 120 acres in the parish of Union, and described as N.½ of S.E.¼ and S.W.¼ of S.E.¼ of Sec. 13, in Tp. 22 N., R. 3 W., in the Northwestern land district of Louisiana. The relators located on the land a lieu warrant, or scrip, No. 168, which was issued to them under authority of Act No. 104 of 1888, p. 169, on the 28th of December, 1917. The defendants pleaded that the relators had no cause or right of action, and, in answer to the suit, admitted the facts alleged in the relators' petition, but pleaded that Act No. 104 of 1888 was superseded and repealed by Act No. 131 of 1906, p. 219. The

case was tried and submitted on a statement of facts, admitted by all parties; and the district court gave judgment for the defendants, rejecting the relators' demand. They have appealed from the decision.

On the 10th of February, 1863, Henry M. Hyams, the father of the relators, purchased from the state 404.63 acres of land in Secs. 3 and 10, in Tp. 14 N., R. 3 E., for which he received patent No. 11,783, under certificate No. 23,907, and for which he paid $505.79, the price of that class or character of land being then fixed by law at $1.25 per acre. It developed that the state had not acquired a title for the land, the United States government having disposed of it otherwise. The act of 1888 authorized the register of the land office to indemnify the holders of patents which had been issued for lands which the state did not own, by issuing lieu warrants, or scrip, to be located on land of the same class or character as the land for which the patents were issued through error. But Henry M. Hyams had died when the act of 1888 was enacted, and his children were all minors. The executor, administering the estate, in 1888, availing the estate of the provisions of the act, surrendered the patent No. 11,783, and had it canceled by the register of the land office, and at the same time filed with the register a written application for a warrant for the same number of acres of land, to be located on land of the same class or character as the land for which the patent had been issued. The executor died before the lieu warrant was issued, and the canceled patent and the application for a lieu warrant were lost sight of in the office of the register of the land office until 1917, after the heirs of Hyams had reached the age of majority. On discovering the canceled patent and the application for a lieu warrant, the register of the land office issued to the heirs of Hyams the war-

rant No. 168, dated the 28th of December, 1917. Meanwhile the act of 1906 had been enacted, providing that the holders of land patents that had been issued through error should be refunded the price which had been paid to the state for the land, and appropriating $5,000 for that purpose. Therefore, when the heirs of Hyams undertook to locate their warrant No. 168 on the land in Sec. 13, Tp. 22 N., R. 3 W., being vacant land of the state and of the same class or character as the land for which the patent No. 11,783 had been issued, the register of the land office, being advised by the Attorney General that the act of 1906 had superseded and repealed the act of 1888, refused to allow an entry under the warrant No. 168.

■■ It is conceded by the Attorney General that the warrant No. 168 would be valid and subject to location on vacant land belonging to the state, and of the same class or character as the land for which the patent No. 11,783 had been issued, if the warrant had been issued before the act of 1906 was adopted; the contention of the Attorney General being that the right of the holders of patents issued erroneously, to obtain lieu warrants under the provisions of the act of 1888, was withdrawn by the act of 1906. Our opinion is that, inasmuch as the executor, for the estate of Hyams, had done everything that was required of him by the act of 1888, to entitle the heirs of Hyams to a lieu warrant for the land which he had bought and paid for and received no title for, and inasmuch as it was then the ministerial duty of the register of the land office to issue a warrant in lieu of the canceled patent, No. 11,783, the heirs of Hyams had the same rights and advantages under the act of 1888 as if they had actually received their lieu warrant, when the act of 1906 was adopted. We are of the opinion also that the act of 1906 did not supersede or re-

peal the act of 1888, to the prejudice of any one holding or entitled to a warrant under the act of 1888 when the act of 1906 was adopted. The act of 1906 has no repealing clause. It appropriated only $5,000, or so much thereof as might be necessary, to refund to the holders of land patents or certificates on which locations had been made through error the price paid for the lands. The appropriation was exhausted by the refunds which were made during the years 1906, 1907, and 1908; after which the act had no force or effect. The purpose of the act, manifestly, was to give to the purchasers from the state, of lands for which the state could not give a title, an alternative right, particularly to those who had located on lands of a class or character of which the state had no more land, such as internal improvement or school indemnity lands.

■ It is argued on behalf of the appellants that the act of 1906 would be unconstitutional if construed so as to repeal the act of 1888, to the prejudice of those who had accepted and complied with the provisions of the act of 1888, in that the act of 1906 would thereby impair the obligation of a contract. It is sufficient, however, to say that the act of 1906 does not purport to be a repudiation of the obligations which were incurred by the state by virtue of the act of 1888. Where a statute does not have a repealing clause, it does not have the effect of repealing a previous statute on the same subject unless the provisions of the new statute cannot be reconciled with those of the previous statute. The provisions of the act of 1906 are entirely reconcilable with those of the act of 1888. It was entirely consistent with the provisions of the act of 1888 for the Legislature, by the act of 1906, to make provision for indemnifying patent holders who either could not obtain lieu warrants for the land which the state had erroneously sold to them or preferred a return of their money. We maintain, therefore, that Act No. 104 of 1888 was not repealed or superseded by Act No. 131 of 1906, to the prejudice of persons holding or entitled to lieu warrants under the provisions of the act of 1888. The decision in State ex rel. Armistead et al. v. Grace, Register of the Land Office, 129 La. 694, 56 So. 641, 643, is appropriate. The relators in that case sought by mandamus to compel the register to issue to them land patents which they had applied for, but which they had not received when Act 215 of 1908, annulling all pending applications for land patents, went into effect. This court ordered the register to issue the patents to the relators because they had done everything which the law required them to do to obtain their patents, and because it was therefore the mandatory duty of the register to issue the patents, before the act of 1908 went into effect. In so deciding the court said:

"In construing statutes, it is the duty of the courts to start out with the prima facie presumption that it is not the intention of the Legislature to annul contracts entered into by the citizen with the state; and all the more must it be presumed that the Legislature has not attempted the vain, because unconstitutional, task of depriving the citizen, without compensation being first made of his property. When the citizen has done everything which the law says he shall do, has paid into the state treasury all that he is required to pay, * * * the state could neither in good conscience nor under the Constitution declare such property a part of the public domain and deprive the entryman of his possession and title. This view is sustained by Pennoyer v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699, 35 L. Ed. 363."

■ It is not contended by the appellees that Act No. 215 of 1908, p. 319, is a bar to the

application of the appellants to enter or acquire public land otherwise than at an auction sale of the property. In fact that statute is not referred to in the pleadings, in the record, or in the briefs filed in this case. The act did not only annul all applications for the entry or purchase of public lands then on file in the land office, where the certificate or patent had not already issued, but it declared that thereafter no one could purchase or enter lands belonging to the state or to any of the levee boards, except by making a deposit of $15 to procure a sale of the land at public auction, and by making the highest bid at the auction sale. Because of those provisions of the act, we have heretofore expressed some doubt as to whether the act was intended to forbid an entry of public land on a lieu warrant, or scrip, as well as a cash purchase from the state. See Albritton v. Shaw, 148 La. 427, 87 So. 32; Smith v. Albritton, 153 La. 507, 96 So. 49; and Albritton v. Steere, 153 La. 561, 96 So. 121. In those cases, however, the court found it unnecessary to decide—and expressly refrained from deciding—whether the act of 1908 forbade an entry of land on a land warrant or scrip. In Albritton v. Shaw, for example, the plaintiff's patent was adjudged null because it was issued in violation of a prohibitory law, Act No. 21 of 1886, prohibiting an entry or a purchase of state land possessed or improved or cultivated by a person holding or claiming adversely to the party seeking to purchase or enter the land. The same proposition was maintained in Smith et al. v. Albritton; but the decision in that case was founded upon the fact that the defendants had a better title, under a patent from the United States, dated the 25th of February, 1884, than the defendant held, under state patents issued in 1917 and 1920. In Albritton v. Steere, it was held

that Act No. 21 of 1886 was not repealed, in so far as it gave a preference right of entry to a person in possession of state land, by Act No. 215 of 1908. The case was decided upon the proposition that the defendant's title, under a patent from the United States, should prevail over the plaintiff's title, under a patent from the state, the land in contest being high land, fit for cultivation, and not swamp or overflowed land. Although the question is not expressly propounded in this case, our opinion is that the provisions of Act No. 215 of 1908 are not appropriate to an application to enter on a lieu warrant, or scrip. land of the same class or character of the land for which a patent was issued erroneously and afterwards canceled.

Although the district judge declared in his judgment in this case that the defendants' exception of no cause or right of action was sustained, he decided the case on its merits, and because of "the law and the evidence being in favor of Fred J. Grace, Register of the State Land Office, et al." There is therefore no occasion for remanding the case for trial on its merits.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the alternative writ of mandamus issued by the district judge be, and it is hereby, made absolute; and, accordingly, the register of the state land office is directed to prepare for the Governor's signature, and the governor is directed to sign and issue to the relators, heirs of Henry M. Hyams, deceased, a patent for the land described as N.½ of S.E.¼ and S.W.¼ of S.E.¼ of Sec. 13, in Tp. 22 N., R. 3 W., in the Northwestern land district of Louisiana; provided that this decree shall not affect any preference right of entry which any one else may have, under the provisions of Act 21 of 1886, or under any other statute.