McCALEB, Justice (concurring in part, dissenting in part).

I am in full accord with the basis upon which the majority opinion is predicated and readily concur in the ruling that defendant is liable. However, it is my belief that plaintiff should also have judgment for $2,963.63, representing the amount withdrawn by her on October 7, 1948 from the Jackson Homestead Association which she allegedly turned over to defendant. It seems clear to me that, whereas the withdrawal from the Jackson Homestead was a separate transaction, it was but a few days before the transfer of the stock and bonds to defendant and, as I view it, part and parcel of a scheme concocted by defendant and his daughter, Mrs. Chopin, to acquire plaintiff's assets and defraud the State of Louisiana by having her qualify for "Old Age Assistance".

It is admitted that Mrs. Chopin accompanied plaintiff to the homestead when the money was withdrawn, just as she was with her on the other occasions when the bonds and stock were transferred. Defendant's testimony that he received only $100 out of the $2,963.63 cash withdrawn by his mother from the homestead,

like the testimony of his daughter, is not very impressive to me.

I believe that the judgment appealed from should be increased to the amount prayed for by plaintiff.

51 So.2d 310

**DOUGLAS et al. v. MURPHY et al.**

No. 38684.

June 30, 1950.

On Rehearing Jan. 9, 1951.

Further Rehearing Denied Feb. 12, 1951.

the amount of $70,000.00 for timber cut and removed from a tract of land containing 160.85 acres situated in Union Parish.

The plaintiffs set forth their title to the land in their petition. The defendants, in their answer, aver that they are the owners of the land and recite their title to it. The defendants interposed a plea of prescription, ten years acquirendi causa. On trial of the case, the lower court sustained the plea of prescription, and dismissed the plaintiffs' suit. The plaintiffs have appealed.

The land in this suit was granted to the State of Louisiana by the United States under the Swamp Land Act of March 2, 1849, 9 Stat. 352. Title to the land passed to the State when its selection of the land was approved by the Secretary of the Interior on May 6, 1852. The defendants trace their title to a patent issued by the United States to Jerry Jeremiah on January 30, 1883 by virtue of homestead entry No. 384, dated February 21, 1874. The defendants in their brief concede that their title deraigned from the Jeremiah patent cannot stand against the prior selection and approval by which the State acquired title. In other words, they concede that the land was the property of the State at the time the Jeremiah patent was issued by the United States and that the State's title was paramount. They further concede that acquisitive prescription does not run against the State.

Albritton, Ware, Litton & West and Wm. Louis Albritton, of Baton Rouge, J. R. Dawkins, of Farmerville, and Taylor, Porter, Brooks, Fuller & Phillips, of Baton Rouge, for plaintiffs and appellants.

Sholars & Gunby, of Monroe, Tucker, Bronson & Martin and Harvey G. Fields, of Shreveport, for defendants-appellees.

PONDER, Justice.

The plaintiffs brought suit against the defendants seeking to recover damages in

Henry M. Hyams purchased from the State on February 10, 1853, 404.63 acres of land in Sections 3 and 10, T. 14 N., R. 3 E. for which he received patent No. 11783 under certificate No. 23907. It developed that the State did not own the land. The Register of the Land Office was authorized by Act No. 104 of 1888 to indemnify the holder of patents which had been issued for lands which the State did not own by issuing lieu warrants to be located on land of the same class or character as the lands for which the patents were issued through error. Hyams died when the Act of 1888 was enacted, at which time his children were all minors. The executor of his estate surrendered the patent erroneously issued for cancellation and applied in writing for warrants covering the same number of acres of land to be located on land of the same character as the land for which the patent was erroneously issued. The executor died before the warrants were issued and nothing further was done until the heirs of Hyams secured lieu warrants in the year 1917 for the patent surrendered by the executor. Warrant No. 170 was acquired by Mrs. Judith Hyams Douglas as one of the heirs of Hyams. She applied, on February 19, 1919, to the State Land Office for the location of the land in the NW¼ of Section 24, T. 23 N., R. 2 W. situated in Union Parish, containing 160.-85 acres. No action having been taken in the matter, Mrs. Douglas renewed her application, without waiving any of her rights, on February 3, 1939, and specially

requested the Register of the Land Office to use warrant No. 170 in the location of the land involved in the suit. The Register of the Land Office rejected the application on March 8, 1939 advising Mrs. Douglas that the lands had been withdrawn from sale or entry by the Governor's proclamation, dated March 20, 1917, as authorized by Act No. 38 of 1914, LSA–RS 41:98. Sometime after March 3, 1941, the Register of the Land Office prepared, and the Governor signed, patent No. 61888 on May 28, 1941, reading in part as follows:

"Whereas Judith Hyams Douglas of the Parish of Orleans in the State of Louisiana located with Warrant No. 170 issued under the provisions of Act 104 of 1888, February 19, 1919, (See decision of the Supreme Court of Louisiana [State ex rel. Hyams' Heirs v. Grace] reported in .173 La. 215 [136 So. 569] and reaffirmed by the Supreme Court on March 3, 1941 [197 La. 428, 1 So.2d 683]), North West Quarter of Section No. Twenty-Four (24) West in the North of Red River Land District, Parish of Union containing One Hundred Sixty & 85/100 (160.85) acres according to the official plat of the survey of said lands in the State Land Office."

Mrs. Douglas transferred an undivided one-half interest in the property to Alvin R. Albritton on June 17, 1942.

Mrs. Douglas was issued other warrants at the time that warrant No. 170 was issued. She made application to have the lands located under her warrants in 1919,

which were rejected by the Register of the Land Office. After repeated applications and two law suits, she finally obtained patents under her warrants. In the case of State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569, the Register of the Land Office took the position that Act No. 104 of 1888 had been superseded and repealed by later acts of the Legislature, after having been so advised by the Attorney General. In the case of State ex rel. Hyams' Heirs v. Grace, 197 La. 428, 1 So.2d 683, the Register of the Land Office resisted the application for the location of the warrants on the advice of the Attorney General. During the month of February 1939, the Register of the Land Office again rejected Mrs. Douglas' renewed application on the ground that the lands had been withdrawn from sale or entry by the Governor's application, dated March 20, 1917, as authorized by Act No. 38 of 1914. In this latter suit the plaintiff sought and obtained an order to compel the issuance of a patent on 280 acres of land. It was only after this suit had become final, on March 3, 1941, that the patent was issued to the property involved in this suit on May 28, 1941.

█ The appellants contend that title did not pass from the State to Mrs. Douglas until issuance of the patent on May 28, 1941. While, on the other hand, the defendants contend that acquisitive prescription will run against one who has a vested right to property the same as if a patent had been issued. They take the position that prescription began to run against Mrs. Douglas from the date that she first made application to locate the warrant on February 19, 1919.

It appears that the trial judge agreed with the position of the defendants that Mrs. Douglas' title became complete on February 19, 1919 when she made her first application to locate the warrant and that the application operated as a severance of the land from the public domain. He was also of the opinion that prescription began to run against her in favor of the defendants under an adverse chain of title from that date. He based his conclusions on the following statements made in the following cases:

"On the contrary we think a mere reading of the opinion of our learned brother will disclose that the idea intended to be conveyed by him was that when the plaintiff applied for the patent in 1919 and renewed the same in 1939, her right thereto became perfect and complete and she thereby acquired a vested right to the property the same as if the patent had issued, entitling her to all revenues derived therefrom. The fact that the record title was in the state did not authorize the state to alienate the same to the prejudice of plaintiff. She could not be charged with the arbitrary refusal of the Registrar of the State Land Office to prepare the patent for the Governor's signature, the functions of both of these officials in connection

therewith being ministerial." Douglas v. State, 208 La. 650, 23 So.2d 279, 283.

"When the citizen has done everything which the law says he shall do, has paid into the state treasury all that he is required to pay, * * * the state could neither in good conscience nor under the Constitution declare such property a part of the public domain and deprive the entryman of his possession and title." State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569, 571.

In addition to the statements made in these cases the defendants rely on the statements made in the cases of Rutledge v. Harrell, 6 La.App. 172; Gay v. Ellis, 33 La.Ann. 249; Standard Oil Company of Louisiana v. Allison, 196 La. 838, 200 So. 273 and Breaux v. Lefort, 209 La. 506, 24 So.2d 879.

In the case of State ex rel. Hyams' Heirs v. Grace, supra, the plaintiff brought mandamus proceedings against the Register of the Land Office to compel that official to issue a patent under a companion lieu warrant. In the case of Douglas v. State, supra, the plaintiff brought suit to recover a cash bonus received from the State from a mineral lease executed by the Mineral Board. What was said in both of those cases applied solely to the rights between the parties. The Register of the Land Office had consistently rejected the applications to locate the lieu warrants and the plaintiffs had to resort to legal action to obtain title to the property and force the issuance of patents. From a reading of the other cases above referred to and similar cases cited by the defendants, we find that they are not pertinent for the reason that they did not involve the rejection of an application to locate lands under lieu warrants. In the cited cases the claimant held certificates of purchase or official receipts evidencing the segregation of the lands from the public domain, except in the Harrell case where the location of the land under the warrant was actually made. In neither of these cases did the State reject or resist the applications.

In our review of the cases cited by the litigants in their briefs and a review of the jurisprudence of this State, we have been unable to find a single holding to the effect that a rejected application to locate land under a warrant would operate as a severance of the land from the public domain and permit prescription to run in favor of a third person against the claimant.

It is true that the rights between contracting parties relate back to the date of an agreement as in the case of an agreement to sell. This is a fiction of law but it does not have the effect of vesting ownership in the party who had agreed to purchase. It merely means that the rights of the parties, upon compliance, revert to the date of the contract. The compliance with the conditions only renders the contract executory and establishes the rights

and liabilities of the parties as of the date of the agreement. Ober v. Williams, 213 La. 568, 35 So.2d 219. This same reasoning is applicable in this case, especially since the State would not accept or recognize the application until forced to do so by a decree of court.

Irrespective of what rights existed between the parties, the fact remains that the consent of the State was not obtained until after a culmination of the litigation and it was only then that the State agreed to issue the patent. Title to the property could not vest in the applicant prior to that time. Such being the case, the plea of prescription is not well founded because ten years had not elapsed from that time to the filing of this suit.

The trial judge in his original opinion gave the plaintiffs judgment against the defendant Murphy in the sum of $3,781.25 as damages for timber removed from the property, less a credit of $412.50 for the value of improvements placed on the land by Murphy. In his original judgment he sustained the plea of prescription insofar as the widow and heirs of Hardy were concerned but refused to sustain the plea as to Murphy because he found Murphy to be in legal bad faith. On rehearing he set aside the judgment and sustained the plea of prescription and decreed Murphy to be in good faith.

█ The findings of fact by the trial court was to the effect that 756,250 ft. of timber was removed from the land and that the timber was worth $10.00 per 1000 ft. which amounted to a value of $7,562.50. The trial judge was of the opinion that the improvements made and taxes paid on the land amounted to the value of $925.00. From our examination of the record, we find that the conclusions of the trial judge in this respect are correct and that the plaintiffs are entitled to judgment accordingly.

█ The plaintiffs contend that the defendant Murphy was in bad faith and that they should therefor recover from him $13,234.38, less a credit of $150.00 with 5% interest from judicial demand until paid. The contention is based on the fact that Murphy had examined the records and knew that the State's title antedated his title and that he was in bad faith because he did not further investigate the public records and ascertain the true situation. The lower court arrived at its conclusions, on rehearing, that Murphy was in good faith under the holding in the case of New Orleans Auction Exchange v. Vincent, 168 La. 802, 123 So. 331 and in the case of Delouche v. Rosenthal, 143 La. 581, 78 So. 970. We have examined these authorities and agree with the conclusion of the trial court in this respect because the defendants and their ancestors' deed was valid in form and contained no apparent defect on its face.

█ In their supplemental brief the defendants are re-urging a plea of estoppel based on allegations made by one of the

plaintiffs in the suit of Douglas v. State, supra, to the effect that the plaintiffs' title became complete at the time of the filing of the application to locate the warrant. The lower court rejected the plea on the grounds that the State was not made a party to this suit and that the defendants had not established the facts upon which the plea was based. We have examined the petition in the case of Douglas v. State, supra, and find that all the allegations therein were made with the view of establishing the rights between the parties to that suit. This Court found, as a matter of fact, that the rights of the plaintiffs related back to the date of the agreement. The allegations made in the petition were merely to this effect. Under the circumstances the plea was properly denied.

For the reasons assigned, the judgment of the lower court is reversed and set aside. There is now judgment in favor of the plaintiffs and against the defendants in the sum of $3,781.25, less a credit of $925.00, with 5% interest from judicial demand until paid.

## On Rehearing

HAMITER, Justice.

The pertinent facts of this case are well and clearly set forth in the opinion heretofore rendered, and they need not be restated.

On the original hearing all counsel argued orally and in their initial briefs only the issues arising out of the plea of ten years' prescription acquirendi causa. After the submission of the case counsel for defendants filed a supplemental brief in which they argued additionally the question of plaintiffs' alleged judicial estoppel and an alternative defense, pleaded in the answer, that the patent from the State of Louisiana under which plaintiffs claim was null and void by reason of its having been issued in violation of a prohibitory law, namely Act No. 21 of 1886, LSA–RS 41:171 et seq.

In the opinion supporting our judgment in favor of plaintiffs we assigned reasons for overruling defendants' pleas of prescription and estoppel, but we omitted to discuss the alternative defense belatedly argued here as aforestated.

Following the rendition of our judgment defense counsel timely filed a motion for a rehearing in which they urged that this court erred in overruling the pleas of prescription and estoppel and "in ignoring and refusing to discuss, and in effect rejecting, the alternative defense * * *."

Plaintiffs' counsel also tendered a motion in which they requested a correction by amendment of the obvious clerical error contained in our decree respecting the damage award and, alternatively, they prayed for a rehearing so that such error might be corrected.

Primarily because of such error in the decree and of our omission to discuss in the opinion the alternative defense we

granted a rehearing. It was not restricted to those matters, however, since some of the members of the court desired further consideration of the pleas of prescription and estoppel. But after additional study of these pleas we are convinced of the correctness of our rulings thereon.

The acquisitive prescription, as heretofore shown, could not commence to run in favor of these defendants until the State of Louisiana ceased in 1941 its resistance to the rights of Mrs. Douglas under her warrant location and then divested itself of the record title to the property by the issuance of the patent. And, to reiterate, what was said in Douglas v. State, 208 La. 650, 23 So.2d 279, 283, applied solely to the rights between the parties, our observation there made, which these defendants (not parties to that cause) rely on, being that " * * * when the plaintiff applied for the patent in 1919 and renewed the same in 1939, her right thereto became perfect and complete and she thereby acquired a vested right to the property the same as if the patent had issued, entitling her to all revenues derived therefrom. * * *"

The plea of judicial estoppel is grounded on the allegations made by Mrs. Douglas in Douglas v. State of Louisiana, supra, and also those by the plaintiffs in this case, to the effect that she acquired a vested right to the land when she applied formally to the State of Louisiana on February 19, 1919, to locate her warrant No. 170.

Defendants have shown no prejudice or damage to them resulting from the allegations of the former suit and, consequently, these plaintiffs are not estopped thereby. Janney v. Calmes, 212 La. 756, 33 So.2d 510, and cases therein cited. The allegations of plaintiffs in the instant cause obviously were in keeping with the above mentioned observation of this court in its opinion in the former case which, as has been shown, merely declared the rights between the parties thereto. Under these circumstances estoppel cannot be successfully invoked.

This brings us to the alternative defense, first urged in this court through a supplemental brief filed after the submission of the case, which is that plaintiffs are without title, right and interest in the disputed land requisite to support their demands for damages in that the attempted location and entry by Mrs. Douglas, together with the patent issued by the State, was in violation of the provisions of Act No. 21 of 1886 and, therefore, was illegal, null and void. In this connection counsel for defendants rely particularly on Section 1 of the statute which recites: "That no purchase or entry of any public lands belonging to the State of Louisiana shall be allowed, when previous thereto such lands have been possessed or improved or cultivated by any person holding or claiming adversely to the party seeking to purchase or enter the same; and such possessor or improver shall have the right of pre-emp-

tion and pre-entry of the lands so possessed, improved or cultivated, to be exercised either under the general laws of the State or under the provisions of this act, in accordance with rules and regulations adopted by the Register of the State Land Office and not inconsistent herewith."

And, to quote from their mentioned supplemental brief, counsel show: "That the quarter section in question here was continually possessed, improved and cultivated since 1874 by defendants and their authors in title can hardly be seriously questioned on the record here made up. It was so being possessed, improved and cultivated by vendor of these defendants when the scrip was located in 1919 and by defendants themselves when the patent was issued in 1941."

The district court, in passing upon such alternative defense, ruled that Act No. 21 of 1886 has no application to the facts of this case. We agree with the ruling. A careful reading of the statute in its entirety, including the title thereof, clearly discloses that the legislation was enacted exclusively for the benefit of an actual settler of not more than 160 acres of state lands, or his widow and heirs, while undertaking the improvement and cultivation of the property requisite to the perfection of a homestead entry or the consummation of a purchase thereof, it serving to protect his right of pre-emption as against any one claiming adversely during the course of the required possession period. The legislation, unquestionably, did not purpose to favor one who seeks to succeed through a sale or assignment to a possession previously held by his assignor. That this is true is particularly shown by the provisions of Section 2 of the statute reciting that " * * * no portion of such quarter section shall be liable to entry or purchase *except by the possessor or improver, or by those who after his death succeeded to his rights as widow or heirs, and not otherwise * * *.*" (Italics ours.)

When Mrs. Douglas made formal application in 1919 to locate her warrant No. 170, which was an entry subsequently recognized by the State of Louisiana through the issuance of the patent, these defendants were not in possession of the land. At that time, according to the record, it was being possessed by the Security Trust Company under a deed dated December 18, 1915, from the Summit Lumber Company; and such organization held the land until a transfer was effected to the Summit Land Company on September 24, 1923. The possession of these defendants commenced on or about January 5, 1928, under a deed of that date executed by the mentioned Summit Land Company.

Since these defendants did not possess the land in 1919 when Mrs. Douglas filed her entry claim with the State of Louisiana, they are not entitled to the benefits of Act No. 21 of 1886, under our interpretation of it; and such statute, therefore, is without application here.

As is shown in our opinion on the original hearing the value of the timber removed from the land was $7562.50, and for this amount plaintiffs are entitled to judgment less the recited credit of $925. To this extent our decree must be corrected and amended.

For the reasons assigned our decree heretofore rendered is now amended as set forth above and, as thus amended, it is reinstated and made the final judgment of this court. The right is reserved to defendants to apply for another rehearing restricted to a consideration of the alternative defense predicated on Act No. 21 of 1886.