Martin O. MILLER

v.

**TRANSCONTINENTAL GAS PIPE LINE CORPORATION.**

Civ. A. No. 15975.

United States District Court,
W. D. Louisiana,
Lafayette Division.

May 21, 1973.

Cooper & Sonnier, Silas B. Cooper, Abbeville, La., for plaintiff.

Oliver & Wilson, McVea Oliver, Monroe, La., and Broussard, Broussard & Moresi, Marcus Broussard, Abbeville, La., for defendant.

## MEMORANDUM OPINION

PUTNAM, District Judge.

This action was initiated on July 31, 1970, in the Fifteenth Judicial District Court of Louisiana for the parish of Vermilion by Martin O. Miller, a citizen of the State of Louisiana, against Transcontinental Gas Pipe Line Corporation (Transco), a Delaware corporation with its principal place of business in the State of Texas. The action was removed to this court under Title 28 U.S. C. § 1441, on grounds of diversity. The amount in controversy exceeds $10,000.-00 according to the allegations of the complaint.

Plaintiff, Martin O. Miller, purchased 599 acres of land from the State of Louisiana on January 8, 1943, lying along and partly on Mulberry Ridge and adjacent marshland. Mulberry Ridge is a narrow ridge several miles in length which parallels the Gulf of Mexico; it subsequently became the center of a large cattle operation conducted by Dr. Miller. The ridge is separated from the Gulf by a narrow strip of marshland to the south. There is a vast marsh area to the north of the ridge. These marshlands are valuable grazing areas. Ridges, such as Mulberry Ridge, provide a resting place for the cattle and a base from which operations are conducted. Included in the acreage purchased by Dr. Miller was Lot Five (5) of Section 18, Township 17 South, Range 1 East, which is the subject matter of this suit. He immediately went into actual possession of the lands acquired by him.

On December 16, 1958, defendant Transco obtained a right of way from Humble Oil and Refining Company for the purpose of constructing, maintaining, operating, replacing and removing a pipe line for the transmission of natural gas and/or liquid hydrocarbons. It is stipulated that the property described in this instrument traverses Lot Five of Section 18, Township 17 South, Range 1 East, and, on December 15, 1959 the original servitude was enlarged to permit construction of a second line parallel

to the first. (Ex. D–6 and D–9). Transco constructed two gas transmission lines in the right of way. To facilitate construction, Transco dredged a flotation canal through Lot Five which runs north and south and completely traverses Mulberry Ridge, cutting off the Western portion from the Eastern portion.[1] The first pipe line, 16 inches in diameter, was completed and placed in full service on March 1, 1959. Construction of the second pipe line, a 20-inch loop line,[2] began on June 22, 1960, was completed September 7, 1960, and placed in service on October 1, 1960. Transco also constructed a 40-foot plug across the flotation canal upon which is located valves and other piping on lands in Section 18 belonging to Humble. This plug is located approximately 100 feet north of plaintiff's property line, on land leased by him, and has been used by him as a cattle crossing for approximately fourteen years. This plug is presently in a deteriorated condition and has in the past been an inconvenience to the plaintiff in that its narrow width and the valves and piping located thereon has retarded progress during cattle drives.

Plaintiff alleges that Transco constructed the canal and gas transmission lines on his land without his consent, and that defendant's refusal to remove said lines constitutes a continuing trespass. He seeks an injunction ordering Transco to remove the lines from his land, to return Mulberry Ridge to its original contour, and to refrain from interfering with the free use and enjoyment of his property. Plaintiff also seeks damages in the amount of $60,000.00, the cost of land surveys in the amount of $1,125.00 and attorney's fees in the amount of $5,000.00. Alternatively, plaintiff seeks rent in the amount of $750.00 per year for so long as defendant uses his land, payments to be retroactive to the date of initial use of his property by the defendant. In any event, plaintiff demands that the canal be plugged, the said plug to be level with the land on either side and for the full width of plaintiff's property, the plug to be supported and protected by bulkheads of creosoted lumber of appropriate size and strength.

Defendant avers, among other things, that Dr. Miller was the owner of Lot Five; that Louisiana Furs Corporation leased Lot Five to Vermilion Corporation and then sold it to Humble Oil and Refining Company subject to the lease; that Humble possessed the property through Vermilion Corporation and the defendant; that Humble has prescribed to the ownership of Lot Five; that defendant, as a person having an interest in acquiring the estate, has a right to plead prescription accruing in Humble's favor and that defendant's servitude from Humble should be declared to be effective.

We consider first the defendant's right under LSA–C.C. art. 3466 [3] to plead the prescription that may have accrued in Humble's favor. The Louisiana decisions construing this article have never applied it under circumstances similar to this case to permit the acquisition of land by prescriptive title. Humble has not been made a party to this suit. We

---

1. Lot 5, Section 18, T 17 S, R 1 E, is triangular in shape, is long and narrow, and consists of 7.78 acres of land. This lot is at the end of Mulberry Ridge, a ridge that is approximately five and one-half miles in length. The Transco canal runs north and south and is approximately 100 feet in width with 40-foot spoil banks on each side. The canal occupies approximately 0.35 acres of the plaintiff's land and cuts off approximately three acres of land to the west from the remaining 595 acres owned by Dr. Miller to the east.

2. A loop line is a line which is installed parallel to and is connected with the existing pipe line for the purpose of increasing gas transmission capacity.

3. LSA–C.C. art. 3466. "Creditors and all other persons, who may have an interest in the acquiring of an estate, or the extinguishment of an obligation by prescription, shall have a right to plead it, even in case the person claiming such estate, or bound by such obligation, should renounce such right of prescription."

are reluctant to determine so complex a question on the meager record before us. The Louisiana courts have applied article 3466 in cases in which the debtor whose rights of prescription are asserted by another is or has been a party to a suit to enforce an obligation and has failed to assert his right of prescription. In these cases, other creditors or a third party possessor have been allowed to intervene in the initial proceedings or in execution of judgment proceedings and to plead the prescription accruing in favor of the debtor. In addition, third possessors, sued directly in an hypothecary action, have been allowed to plead the prescription accruing in favor of the mortgagor, a right which has recently been expressly granted to the third possessor by other statutory provisions. See: LSA–C.C. art. 3403, repealed La. Acts 1960, No. 30, § 2, effective January 1, 1961; replaced by L.C.Civ.P. art. 3743.

■■ Nor can we say that the defendant has carried the burden of proof of facts necessary to support its plea of acquisitive prescription of ten years under LSA–C.C. art. 3479. Under this article, in order to prevail it must be shown by a preponderance of the evidence that Humble entered into actual possession of the property, in good faith, as owner, under a title translative thereof. The limited history available to us in this record does not permit such conclusion. Humble acquired a large tract of land from Louisiana Furs, Inc., in 1958 (Ex. D–4), which included "Sections Seventeen (17) and Eighteen (18)" in Township Seventeen. These and thousands of acres included therewith are described on page 10 of the deed as having been acquired by the ancestors in title of Louisiana Furs in deeds executed in 1923 and 1924. Lot 5 of Section 18 is not specifically mentioned, and it in fact did not exist in 1923 or 1924, but later built up along the coast and was not surveyed by the State until years later. It was patented to Dr. Miller in 1943 as stated above, following the decision of the Louisiana Supreme Court in State ex rel. Hyams' Heirs v. Grace, 173 La. 215, 136 So. 569 (1941). See also Exhibit P–14, which purports to be a plot of survey made by F. Shutts' Sons, Civil Engineers, Lake Charles, Louisiana, May 24, 1954, showing lands belonging to Louisiana Furs in Township 17 South, Range 1 East, and adjacent townships. It will be noted that the property in this suit is not included in the lands shown as owned by Louisiana Furs. Having reached this conclusion, we reject defendant's plea of prescription.

Moreover, rather than decide this issue in this lawsuit involving little more than $^{35}/_{100}$ths of an acre, we would realign the issues, separate the plea and remand this demand to the State court for lack of jurisdictional amount. See 28 U.S.C.A. § 1441(c). It is not necessary for us to do this, however, for we have concluded that plaintiff's rights are lost as a result of the operation of Louisiana's laws relating to prescription of causes of action as hereinafter set forth.

■ We next consider the defendant's contention that it has acquired a servitude under the St. Julien Doctrine, a doctrine which acquired its name from the leading case of St. Julien v. Morgan Louisiana and T. R. Co., 35 La.Ann. 924 (1883). This principle of law is set forth in A. K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee District, 238 La. 926, 117 So.2d 60, 63 (1960) as follows:

"[W]here a property owner, with full knowledge that its property has been taken possession of by a public body for the purpose of constructing public works, stands by without resistance or complaint, as was the case here, considerations of public policy require that the owner shall not be permitted to reclaim its property but shall be restricted to a claim for compensation for the value of the property taken and for damages to adjacent land, if any, determined as of the date of the taking."

Under this doctrine the owner may not reclaim his property free of the servi-

tude, nor may he demand rent for use of his property, but is restricted to a claim for compensation for the value of his land and for severance damages. *St. Julien,* supra. Nor may the owner reclaim his land free of the servitude even though he was unaware that his property had been taken for a public purpose. Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454 (1955).

Defendant Transco is a body having the power of eminent domain and the St. Julien Doctrine is applicable to this appropriation. See Veillion v. Columbia Gulf Transmission Co., 192 So.2d 646 (La.App. 3d Cir. 1966). Public policy and natural equity considerations embodied in this doctrine prevent our granting an injunction ordering the removal of the pipe line. These same considerations demand that we deny plaintiff's alternate claim for rent.

The claim for compensation and severance damages under the St. Julien Doctrine is a personal action, barred by the prescription of ten years. Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562 (1910); McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42 (1907); Maxfield v. Gulf States Utilities Co., 65 So.2d 615 (La.App. 1st Cir. 1953); LSA–C.C. art. 3544. The evidence in this case convinces us that the plaintiff and his foreman were aware of the pipe line construction when the line was built in 1960, and that he has always entertained the belief that he owned the land where it is located. This knowledge was sufficient to put plaintiff on inquiry to ascertain whether or not the pipe line in fact traversed his property. The liberative prescription of ten years applicable here commenced to run on the date he became aware of the existence of the line, well over ten years past. Cartwright v. Chrysler Corp., 255 La. 598, 232 So.2d 285 (1970); Maxfield v. Gulf States Utilities Co., 65 So.2d 615

(La.App. 1st Cir. 1953). The first pipe line installed by the defendant was a 16-inch line which was completed in the latter part of 1958 and put in service on March 1, 1959. Construction of the 20-inch loop line commenced in June, 1960, and was completed on September 7, 1960 and placed in service on October 1, 1960. Initiation of construction on the 20-inch loop line was a taking within the contemplation of the St. Julien Doctrine. Plaintiff filed this suit on July 31, 1970, more than 10 years after any taking, thus his personal action for compensation and severance damages is lost.

Under the St. Julien Doctrine the acquiescing owner cannot treat the appropriation as tortious; but, if the entry was unlawful, the defendant would be subject to successive actions for trespass until the property was lawfully expropriated. St. Julien v. Morgan Louisiana & T. R. Co., supra; Veillion v. Columbia Gulf Transmission Co., supra. Assuming, but not deciding, that the taking was tortious, the claim for trespass damages, except those damages which were sustained within the year preceding the filing of this suit, is barred by the prescription of one year. Standard Chemical Co. v. Illinois Central R. Co., 130 La. 148, 57 So. 782 (1912); LSA–C.C. art. 3535. Plaintiff has failed to prove any damages occurring within the year preceding the filing of this suit, or thereafter; thus, we deny plaintiff's claim for trespass damages.

Under Louisiana law a body with the power of eminent domain may, according to its needs, acquire the ownership of or a servitude over the land in question. Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369 (La.App. 1st Cir. 1961). Under the St. Julien Doctrine, the unopposed appropriation for public purpose is regarded as creating a servitude, Veillion v.

4. LSA–R.S. 19:2 "Expropriation by state or certain corporations Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:

(7) Any domestic or foreign corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas; . . . ."

Columbia Gulf Transmission Co., 192 So.2d 646 (La.App. 3 Cir. 1966); and the doctrine operates though the failure to object is due to the fact that the owner did not actually know that the work was on his land until a survey was made. Maxfield v. Gulf States Utilities Co., 65 So.2d 615 (La.App. 1st Cir. 1953). Since the defendant in this case has acquired a servitude under the St. Julien Doctrine, it is not necessary for this court to consider defendant's contention that it has prescribed to a servitude under LSA–C.C. art. 765.

The extent of the servitude acquired by the defendant remains to be determined. This inquiry would be the same whether the servitude was acquired by prescription or under the St. Julien Doctrine. Plaintiff adamantly maintains in his briefs that the flotation canal which traverses his land is not necessary for the public utility or general use and that in any event the defendant must be required to fill the canal and return Mulberry Ridge to its original contour.

■ The general rule in expropriation cases is that the least property interest that will adequately serve the purpose of the taker will be the one granted him. In Central Louisiana Electric Co. v. Covington and St. Tammany L & J Co., 131 So.2d 369, 372 (La.App. 1st Cir. 1961), an expropriation suit, the court said:

"Precedent has established the rule that in an expropriation proceeding the expropriating authority may take only such property, both in nature and extent, or rights therein, as is reasonably necessary in the exercise of the purpose or function for which the taking is authorized. Prior jurisprudence has also firmly established the rule that an expropriating authority will be neither permitted nor required to take more land, or rights therein, than is reasonably sufficient and suitable for its particular need."

And in John T. Moore Planting Co. v. Morgan's La. & T. R. & S. S. Co., 126 La. 840, 53 So. 22, 33 (1910), a case in which the St. Julien Doctrine was applied, the court said:

"The owner of the land cannot be presumed to have acquiesced in the railroad's taking more than it had need of, or than the law authorized it to take by expropriation."

Under LSA–R.S. 19:2(7) the defendant pipe line company may only "expropriate needed property." Also, under LSA–C.C. art. 2626 et seq., which deal with the taking of property necessary for the general use, only such "lands reasonably necessary for the purpose intended by the company" may be expropriated. See art. 2636. When the owner pleads that the land sought to be expropriated exceeds that which is reasonably necessary, the court shall determine the extent of the land to be expropriated. LSA–C.C. art. 2636; LSA–R.S. 19:2 et seq.

■ Several cases indicate that the St. Julien servitude is limited to the area actually occupied and the use to which the land has been put. John T. Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., supra; Consolidated Companies, Inc. v. Haas Land Co., Ltd., 179 La. 19, 153 So. 6 (1934); Louisiana Power and Light Co. v. Dileo, 79 So.2d 150 (La.App. 1st Cir. 1955); See Veillion v. Columbia Gulf Transmission Co., supra. These cases apply where the appropriator seeks to expand his rights and have no application in this case where the defendant may have occupied more area than is necessary for its purpose and it is sought to reduce its holdings.

From the foregoing, it is clear that this court can maintain the defendant in possession of only that area reasonably necessary for its purpose, e. g., the transmission of natural gas. It may well be that the flotation canal is not necessary for the defendant's purpose and thus is not necessary for the public utility. No evidence has been presented to this court on the issue of what is reasonably necessary for the defendant's purposes, and, unless the parties agree

as to what is necessary, an evidentiary hearing will be held on this matter.

Thus we find that the defendant has acquired a servitude on the plaintiff's property for the purpose of supplying the public with natural gas. We also find that the plaintiff's personal action for compensation and severance damages as well as his action for trespass, if any, has prescribed. The issue as to the extent of the servitude acquired by the defendant is left open pending a hearing on the issue of what is reasonably necessary for its purpose.

The attorneys representing defendant will prepare a decree in accordance with the foregoing, and submit it for signature pursuant to Local Rule 9(e). Judgment will not be entered until the formal decree is signed and filed.

It is so ordered.